EDWARD T. SMITH, AND DEBORAH B. SMITH v. WILL A. HUDSON, INDI-
VIDUALLY AND IN HIS CAPACITY AS AGENT FOR WILL HUDSON,
LIMITED, A CORPORATION, AND IN HIS CAPACITY AS AGENT FOR
FIRST NATIONAL REALTY, INC., A CORPORATION, AND WILL HUD-
SON, LTD., A CORPORATION, AND FIRST NATIONAL REALTY, INC., A
CORPORATION

No. 7910SC1111

(Filed 19 August 1980)

1. **Frauds, Statute of § 3; Contracts § 25.3– lack of consideration – statute of frauds
   – failure to plead defenses**

   In an action to recover damages for breach of contract for the sale of land
   and construction of a house thereon, defendants failed to plead affirmatively
   in their answer the defenses of consideration and the statute of frauds, and
   defendants thereby waived their right to assert these defenses.

2. **Frauds, Statute of §§ 2.1, 6.1– contract to convey land and build house – descrip-
   tion of land adequate – statute of frauds inapplicable to construction of house**

   In an action to recover damages for breach of a contract for the sale of
   land and construction of a house thereon, the contract met the requirements
   of the statute of frauds since the description of the underlying land in the
   offer to purchase as "Lot #66, Sherwood Forest S/D" and "the property
   located at 601 King Richard Road, Raleigh, N. C. 27610" was sufficient to
   meet the specificity requirements of the statute; furthermore, the statute of
   frauds does not apply to the construction of a house, as compared to a house
   already built, because a house not built is not an interest in realty.

3. **Vendor and Purchaser § 1.1; Frauds, Statute of § 6.1– contract to construct
   improvements on realty – no written agreement required**

   Though it is the better parctice for all contracts for the construction of
   improvements on realty to include the written specifications of the structure
   to be built and the contents to be included therein, it is not required in this
   jurisdiction that such a contract be in writing.

4. **Contracts § 26.1– contract to convey land and build house – parol evidence
   admissible**

   In an action to recover damages for breach of a contract for the sale of
   land and construction of a house thereon where defendants neither invoked
   the parol evidence rule as to any prior negotiations leading to the signing of
   the purchase agreement nor challenged any of plaintiffs' oral testimony as
   in any way inconsistent with the terms of the written purchase agreement,
   the parol evidence was admissible to establish the whole of the contract even
   though only part of the agreement was reduced to writing.

5. **Vendor and Purchaser § 1– contract to convey land and build house – breach –
   sufficiency of evidence**

   Evidence was sufficient to show that a contract for the construction of a

house was made between the parties and that defendant breached this contract where the evidence tended to show the existence of a written contract, signed by the individual defendant, to purchase a specifically described parcel of realty upon which a 1400 square foot house with certain features would be built at the cost of $35,000; an oral agreement between the parties that the hallways in the house were to be 42 inches wide, that the garage was to be wider to accommodate plaintiff's special van, that the bathroom basin was to be specifically placed, and that other specified measures would be taken to accommodate the needs of plaintiff who was confined to a wheelchair; the transfer of earnest money to defendant and acceptance thereof by defendant on two different occasions; defendant's selection of a set of house plans and defendant's offer in his letter to provide plaintiffs with "plans, spec. etc." even though he could not build their house; defendant's promise after plaintiffs obtained a loan commitment to start construction within a few days; defendant's statement, although a purportedly false statement, that a building permit for the house had been obtained; defendant's request to build the house facing a road other than the one originally agreed on; and defendant's letter to plaintiffs that he would be unable to build their home "because of health reasons and other circumstances."

6. **Vendor and Purchaser § 1– contract to convey land and build house – purchasers" ability to comply with loan commitment terms – no showing required**

In an action to recover damages for breach of a contract for the sale of land and construction of a house thereon, there was no merit to defendants' contention that plaintiffs could not recover because they failed to show that they could have complied with all the terms of their loan commitment, since the written offer to purchase was contingent only upon the ability of the plaintiffs to obtain a thirty year loan; there was no evidence of any requirement in the contract between plaintiffs and defendants that the specific terms of the loan commitment must be met or that other lenders could not be sought; the obligation of plaintiffs under the loan commitment to supply the title insurance, survey, etc. would not have arisen prior to the time of closing; and defendant's letter stating that he could not construct the house eliminated any requirement that plaintiffs fulfill any subsequent obligations under the contract.

APPEAL by plaintiffs from *Canaday, Judge.* Judgment entered 5 July 1979 in Superior Court, WAKE County. Heard in the Court of Appeals 14 May 1980.

This is an action for damages arising out of a contract for the sale of land and the construction of improvements thereon. The evidence of plaintiff-appellants, Edward T. Smith and Deborah B. Smith, tends to show that in December 1975, Edward Smith was approached by defendant Will Hudson, the pro-

prietor of Will Hudson, Ltd., concerning the plaintiffs' interest in buying or building a house. During the months of January or February 1976, the Smiths and Hudson had numerous conversations concerning the design of a "barrier-free" house to accommodate the needs of Edward Smith, who was confined to a wheelchair.

On 10 March 1976, the parties executed an "offer to purchase" on a standard form provided by the Raleigh Board of Realtors. The contract provided for the sale of "house and Lot #66 Sherwood Forest S/D House consisting of about 1400 Square Feet heated area and extra width single car garage." The contract price was $35,000 with $500 to be paid as earnest money, and an additional $1,300 to be paid upon delivery of the deed to the purchaser. The following conditions and subsequent strike-outs were also added in the contract:

"1. Builder to purchase lot from present owner, purchase price is included in this agreement.

2. Builder to landscape all front side and twenty feet to rear of house.

3. Buyer to pay closing cost in excess of Seven Hundred Dollars and pre-paid items. Builders to pay Seven Hundred Dollars toward closing cost.

*4. ~~Special orthopedic tub and shower to be included.~~

*5 ~~Ramps to be included on all exterior doors to made adaptable for wheel chair.~~

6. Buyer to select carpet and appliances from Builders Sampler.

7. Buyer to select all exterior and interior colors.

8. Central air to be included with gas heat."

* [Subsequent deletions by the parties.]

The contract was subject to a payment of $33,200 representing the balance of the purchase price to be paid by "obtaining a conventional loan for thirty years (30)."

Following the execution of the offer to purchase agreement, the plaintiffs went to Raleigh Savings & Loan Association to inquire about a loan. At this time, Marshall Haywood, a loan officer for Raleigh Savings & Loan Association, examined the Smiths' financial statement and informed them that they did not have sufficient funds in March to obtain the loan in question.

On 23 April 1976, the Smiths' original check for $500, for earnest money deposit, was received in the mail. No letter of explanation for the return of the check was included. The check had not been deposited to the account of Will Hudson, Ltd., or any other account. Edward Smith then called Mr. Hudson concerning the check, at which time Mr. Hudson stated that, since the plaintiffs had not had the required amount of money in their savings for the closing and down payment, he thought the money would be better put to use by plaintiffs. The plaintiffs asked Mr. Hudson "very emphatically" if the return of the check negated the plaintiffs' offer to purchase and the defendants' commitment to build the house. Mr. Hudson responded negatively and went on to say that he felt very comfortable with the agreement, that he had a good understanding about the agreement, and that he was still committed to building the house once the plaintiffs had obtained a definitive loan commitment from Raleigh Savings & Loan.

On 22 July 1976, Raleigh Savings & Loan Association made a loan commitment to Edward Smith in the amount of $33,200, payable in monthly installments over a thirty-year period at an interest rate of 9¼%. The loan commitment was to expire on 1 November 1976. Mr. Smith telephoned Mr. Hudson to inform him of the loan commitment. In response to Mr. Smith's question as to when defendant would start building, Hudson replied that he would start within a week or ten days. Similarly, Marshall Haywood, of Raleigh Savings & Loan Association, informed Hudson by telephone that the loan had been approved.

Mr. Haywood also inquired as to when Hudson would start to construct the house, and Hudson's response was that he would start construction within a week or ten days. On several occasions Mr. Smith communicated to defendant that the loan commitment would expire on 1 November 1976.

Approximately a month after notifying defendant of the loan commitment, the Smiths went by to inspect the construction site and found no evidence of construction activity. Upon telephone inquiry by plaintiffs as to why no construction had begun, Mr. Hudson stated that all his crews were busy meeting deadlines elsewhere and that he would move to the plaintiffs' site as quickly as possible. About two weeks later the Smiths visited the house site and again saw no evidence of any construction activity. Mr. Smith called defendant Hudson again to ask why no construction had been started and Hudson's response was that they were still behind on deadlines on other sites. At this time defendant Hudson stated that a building permit had been issued, but upon investigation by Mr. Smith a week later, he was informed by a Raleigh City Clerk that no building permit had been issued. Two days later the plaintiff called Mr. Hudson to ask him again if he were able to start construction. At that time defendant asked Mr. Hudson if he thought he could meet the November 1 deadline, and Mr. Hudson responded that he could not meet the November 1 deadline, but that he could meet it within seven to ten days of November 1. Thereafter, Mr. Smith obtained approval from Mr. Haywood to extend the deadline to 1 December 1976. Mr. Hudson then stated that he needed money to get started, and during the same day, the plaintiffs went to Mr. Hudson's office and gave him another check for $500.

On 7 October 1976, the plaintiffs wrote a long two-page letter, single-spaced, to defendant stating that the loan commitment date had been extended to 1 December 1976; that the defendant had repeatedly acted in disregard of his contractual obligations; and that the plaintiffs demanded that defendant take immediate steps to start construction at the house site. On 8 October 1976, the plaintiffs received the following letter on the stationery of Will Hudson, Ltd. from defendant:

"I am sorry to inform you that we, Hudson Homes, Inc., will not be able to build your home at this time because of health reasons and other circumstances. However, I will be delighted to provide you with plans, spec., etc. If you are still interested in Lot #66, Sherwood Forest, we/I can work something out for you on the lot also."

At the close of the plaintiffs' evidence, the defendants moved for a directed verdict for the following reasons: (1) failure to comply with the statute of frauds; (2) lack of consideration; (3) the parties never reached an agreement as to the essential terms of the contract; and (4) the plaintiffs could not show that they were able to comply with all the terms of their loan commitment.

The plaintiffs now appeal from the judgment of the trial court granting the defendants' motion for directed verdict.

*Shyllon, Shyllon & Ratliff by Ernest E. Ratliff for plaintiff appellants.*

*Seay, Rouse, Johnson, Harvey and Bolton by George H. Harvey for defendant appellees.*

CLARK, Judge.

[1] At the outset we note that defendants failed to plead affirmatively in their answer the defenses of failure of consideration and the statute of frauds as required by N. C. Gen. Stat. § 1A-1, Rule 8(c), and they thereby waive their right to assert these defenses. *Yeager v. Dobbins,* 252 N.C. 824, 114 S.E. 2d 820 (1960); *Grissett v. Ward,* 10 N.C. App. 685, 179 S.E. 2d 867 (1971). Although not wholly determinative, it is significant that defendants made no motion to amend their pleadings and plaintiffs had no notice that such a defense would be raised. *Grissett v. Ward, supra; Young v. Young,* 43 N.C. App. 419, 259 S.E. 2d 348 (1979), (failure to plead laches under Rule 8(c)).

[2] Even if defendants had effectively pled N.C. Gen. Stat. § 22-2, the contract nonetheless meets the requirements of the statute. First, the description of the underlying land, in the

Smith v. Hudson

offer to purchase, "Lot #66, Sherwood Forest S/D," "the proper-
ty located at 601 King Richard Road, Raleigh, N. C. 27610" was
sufficient to meet the specificity requirements of the statute of
frauds. Furthermore, N.C. Gen. Stat. § 22-2 does not apply to the
construction of a house, as compared to a house already built,
because a house not-built is not an "interest in realty." *Rankin
v. Helms,* 244 N.C. 532, 94 S.E. 2d 651 (1956); Webster, Real
Estate Law in North Carolina, §§ 12 to 18 (1971) (real fixtures).
*See also, Thompson v. Horrell,* 272 N.C. 503, 158 S.E. 2d 633
(1968); *Gurganus v. Hedgepeth,* 46 N.C. App. 831, 265 S.E. 2d 922
(1980); *Wise v. Isenhour,* 9 N.C. App. 237, 175 S.E. 2d 772 (1970)
(cases interpreting "interests in land" within N.C. Gen. Stat. §
1-76).

[3] "In most construction and home improvement contracts,
the contract will be for services or for labor and materials and
not a sale of goods within Article 2 of the [Uniform Commercial]
Code." 1 Anderson, Uniform Commercial Code, § 2-105.11 (1970)
and § 2-201.15 (1979 Cum. Supp.). In some circumstances,
however, the sale of building materials to be used in the con-
struction of a house may come within the statute of frauds
provisions of the Uniform Commercial Code if the value of the
building supplies (as goods) prior to construction exceeds
$500.00. N.C. Gen. Stat. § 25-2-201; *Lowe's Companies, Inc. v.
Lipe,* 20 N.C. App. 106, 201 S.E. 2d 81 (1973). In *Lowe's* the
contract at issue was between the supplier and either the build-
er or the party for whom the house was to be built. The statute
of frauds in N.C. Gen. Stat. § 25-2-201 was successfully pleaded
as a defense. In the instant case, however, the contract was a
"hybrid" contract to purchase an unspecified mixture of goods
and services and the statute of frauds was not pleaded. Conse-
quently, while we believe that it will always be the better prac-
tice that all contracts to construct improvements on realty
include the written specifications of the structure to be built
and the contents to be included therein, we can find no author-
ity in this jurisdiction requiring that such a contract be in
writing.

[4]  Similarly, in addition to their failure to assert the statute of
frauds, the defendants have neither invoked the parol evidence
rule as to any prior negotiations leading to the signing of the

purchase agreement nor challenged any of plaintiffs' oral testimony as in any way inconsistent with the terms of the written purchase agreement, and as a consequence, the parol evidence was admissible to establish the whole of the contract even though only part of the agreement was reduced to writing. *Rankin v. Helms, supra;* N.C. Gen. Stat. § 25-2-202 (b); 32A C.J.S. *Evidence* § 1003(14)b. (1964).

The remaining two issues are, therefore, whether the plaintiffs introduced sufficient evidence from which it could be concluded that a contract was formed and breached by defendants and whether the plaintiffs were required to show that they could comply with the terms of the loan commitment from Raleigh Savings and Loan Association.

[5] The plaintiffs offered the following evidence of contract formation: (1) the existence of a written contract, signed by defendant Hudson, to purchase a specifically described parcel of realty upon which a 1400 square foot house with certain features, including an orthopedic shower and entrance ramp to accommodate the handicaps of Mr. Smith (these latter provisions were subsequently deleted by mutual agreement of the parties); (2) an oral agreement between Mr. Hudson and Mr. Smith that the hallways in the house were to be 42 inches wide, that the garage was to be wider to accommodate plaintiff's special van; that the bathroom basin was to be specifically placed; that the lot was to be graded to create the appropriate inclines; that the electrical outlets were to be placed 12 to 15 inches from the floor; and that the doors were to be 36 inches wide; (3) the transfer of earnest money to Hudson, and acceptance thereof by Hudson on two different occasions; (4) defendant Hudson's selection of a set of house plans and the defendant Hudson's offer in his letter of 8 October 1976, to provide plaintiffs with "plans, spec. etc." even though he could not build their house; (5) the defendant Hudson's promise in September to start construction within a few days; (6) defendant Hudson's statement (although a purportedly false statement) that a building permit for the house had been obtained; and (7) defendant Hudson's request to build the house facing Providence Road rather than King Richard Road. The evidence is sufficient for a jury to conclude that the plaintiffs and defendants entered into a con-

tract whereby Hudson, through one of his corporations, was to construct a barrier-free home according to the plans and specifications agreed upon by the parties and that plaintiffs were to pay defendants a total of $35,000 for the lot with the house constructed thereon.

The defendants argue that there was never a "meeting of the minds" between the parties and that the "offer to purchase" was not a contract but only an agreement to start negotiations. We do not agree. The cases *Boyce v. McMahan*, 285 N.C. 730, 732, 208 S.E. 2d 692 (1974); *Elks v. Insurance Co.*, 159 N.C. 619, 75 S.E. 2d 808 (1912); and *Howell v. C. M. Allen & Co.*, 8 N.C. App. 287, 174 S.E. 2d 55 (1970), relied upon by the defendants to establish this position, are inapposite. In *Boyce* there was a writing stating that "[t]he parties hereto agree to supplement this preliminary agreement by executing a more detailed agreement at some specific and subsequent date to be agreed to by the parties hereto." In the instant case there was no such "contract to contract" at some future date. The plaintiffs' evidence tends to show that any changes which occurred were modifications of an already existing contract as opposed to an agreement to contract *in futuro*. In *Elks* there was a series of letters evidencing negotiations leading to a contract to make a loan, a contract which was held not to be consummated since there had been no agreement as to the terms of the loan, when the loan was payable, and the lender's priority in the security. Similarly, in *Howell*, the essential price term was missing. In the case at bar the price, the settlement date, and when the contract amounts were to be paid were all specified in the written offer to purchase which was signed as "accepted" by defendant Hudson.

[6] The defendants argue, however, that the plaintiffs cannot recover because they have failed to show that they could have complied with all of the terms of the loan commitment issued by Raleigh Savings and Loan. We see no merit in this argument. The written offer to purchase is contingent only upon the ability of the plaintiffs to obtain a conventional thirty-year loan and there is no evidence of any requirement in the contract between plaintiffs and defendants that the specific terms of the Raleigh Savings and Loan Commitment must be met or that

other lenders could not be sought. Furthermore, the obligation of plaintiffs under the loan commitment to supply the title insurance, survey, etc. would not have arisen prior to the time of closing. Hudson's letter of 8 October 1976 stating that he could not construct the house eliminated any requirement that the plaintiffs fulfill any subsequent obligations under the contract.

The plaintiffs have offered enough evidence from which a jury could conclude that a contract between the parties was made and that defendants breached this contract, thereby entitling plaintiffs to recover, as a minimum, nominal damages. No issue of damages was raised in this appeal.

The judgment of the trial court is Reversed and the cause is Remanded.

Chief Judge Morris and Judge Erwin concur.