IOWA NATIONAL MUTUAL INSUR-
ANCE COMPANY, Plaintiff,

v.

Tilmon R. COLTRAIN, Individually, and
D/B/A Coltrain's Truck Line, Ralph
Mason, The Transport Corporation, and
United States Fidelity and Guaranty
Company, Defendants.

Civ. No. 885–G.

United States District Court
M. D. North Carolina,
Greensboro Division.

July 5, 1956.

Jordan & Wright, Greensboro, N. C.,
for plaintiff.

Critcher & Gurganas, Williamston,
N. C., Wharton & Wharton, Greensboro,
N. C., for defendants.

HAYES, District Judge.

The Iowa Mutual National Insurance
Company issued on August 21, 1953 to

Tilmon R. Coltrain doing business as Coltrain Truck Lines, a policy of Automobile Liability Insurance No. C.A.L. 35554 with an Amendment "Form A 303a Long Haul Truckmen Limited." A list of vehicles covered by the policy was attached and this policy was in full force and effect on August 16, 1954 when one of the trucks so insured was involved in a collision in which damages were sustained at Garden City, Ga., a point some three hundred miles from Williamston, N. C. where Coltrain was located and where his vehicles were garaged. Form A–303a attached to the policy and being a part thereof contained the following:

"1. The regular and frequent trips of the automobile do not exceed 100 miles each in length, measured from the point at which the load or any portion thereof is placed on the automobile to the farthest point at which the automobile transports any part of such load or at which the automobile is operated;

"2. No regular or frequent trips of greater length are made by the automobile;"

Section 3 of the amendment was as follows:

"3. The insurance does not cover as an insured any person or organization, or any agent, employee or contractor thereof, other than the named insured, who is required to carry automobile liability insurance under any motor carrier law because of transporting property for the named insured or for others."

The facts disclose that Coltrain generally was engaged in the hauling of produce and fertilizer in Eastern North Carolina, also tobacco during the tobacco season. When these operations were confined to North Carolina his trips were seldom in excess of 100 miles. While this policy of insurance was in force Coltrain entered into a contract with Transport Corporation to furnish Transport Corp. his entire fleet of trucks for the purpose of moving the tobacco crop out of Georgia into North Carolina and Virginia

which trips at all times involved travel far in excess of 100 miles. The truck involved in this accident was only one of eight of such trucks that had been constantly, regularly and uninterruptedly used by Transport Corporation in the removal of the tobacco from the very beginning of the tobacco season until the happening of this accident on August 4th.

When Coltrain placed these trucks and drivers at the disposal of Transport Corporation, Coltrain no longer retained any control over said trucks or drivers but placed them completely under the control and direction of Transport Corporation which utilized them continuously for hauling tobacco from points in Georgia to such destinations in North Carolina and Virginia as the Transport Corporation directed. Coltrain had no carrier's license to operate at all in Georgia and was operating exclusively under the franchise of Transport Corporation, and with the license tags of Transport Corporation displayed on its vehicles.

The accident in question occurred when the truck was returning to Blackshear, Ga. from carrying a load of tobacco to Durham, N. C. It would seem that under any type of interpretation given to the meaning of regular and frequent trips it would necessarily include such an operation as this. It would warp the meaning of the English language to say that such an operation was rare and infrequent and such an operation undoubtedly excludes coverage from the policy under its terms unless there is evidence to warrant a waiver or to estop the plaintiff from asserting the defense. Johnson v. New Amsterdam Casualty Co., 234 N.C. 25, 65 S.E.2d 347, 29 A.L.R.2d 507 and Wright v. Mercury Insurance Co., 244 N.C. 361, 93 S.E.2d 438. In the light of the treatment by the Supreme Court of North Carolina of the subject matter in the two cases cited above and in the case decided by this court in Virginia Surety Co. v. Wright, D.C., 114 F.Supp. 124, it is unnecessary to discuss the matter at greater length.

■ The premium rate on the policy was based on this limited use of the trucks and the parties had the capacity to make the contract and this limited use clause is a valid provision.

■■ We come next to the question of waiver and estoppel discussed in *Wright v. Mercury Ins. Co.*, supra, and particularly the cases of Midkiff v. North Carolina Home Ins. Co., 197 N.C. 139, 147 S.E. 812, and Id., 197 N.C. 144, 147 S.E. 814. While there is evidence indicating that the local agent of the plaintiff at Williamston knew in a general way of Coltrain's operations in North Carolina, the evidence in its entirety does not warrant a finding that he knew that Coltrain surrendered complete control of his trucks to the Transport Corporation for regular and frequent use during the entire tobacco season in moving the crop from Georgia to the N. C. and Virginia warehouses. The correspondence and other evidence also disclose that this agent had no knowledge or experience in dealing with the plaintiff on this type of insurance and he requested some person to come who could handle this type of insurance and that the only agent who had the authority to handle the insurance or accept the risk was Robert Myer of Greensboro, N. C. There is not sufficient evidence to warrant a finding that Myer or DeBardelaben had any knowledge of any such frequent and regular use of the trucks beyond the limited radius nor of any facts to put the company on notice of any such use at the inception of the insurance contract.

If the writing agent of the plaintiff knew of the use at the time of the inception of the contract, under the North Carolina law the insurer would not be permitted to avoid liability on that ground.

■ It is to be noted that the plaintiff is not here contending that the policy is void. It does not deny its liability. It does not deny its coverage on accidents occurring within the radius specified in the policy or for infrequent trips made beyond the radius, but it contends and we think, rightly so, that the trip in question was not a rare or infrequent trip occurring beyond the radius of 100 miles but comes clearly within the meaning of the limiting clause prohibiting its regular and frequent use beyond the 100 mile radius and that the plaintiff has not waived its right under this clause nor is it estopped to assert its defense based thereon.

It is not necessary in our view to discuss the effect of Clause 3 because in our view the case should be disposed of on the grounds above assigned and it follows that the plaintiff is entitled to a judgment absolving it of any liability with respect to the accident.

■ The defendant U. S. Fidelity and Guaranty Co. contends that the accident occurred when the leased truck was making an empty return trip and that it was a one way lease for a single trip and that its policy did not cover the accident because it had no contractual relation with Coltrain or his driver Mason, if it had been a single trip and entered into with the understanding that the empty truck was under the control and management of the owner as soon as unloaded, a policy such as that issued by the U. S. F. and G. would not apply. Costello v. Smith, 2 Cir., 179 F.2d 715, 16 A.L.R.2d 954. However, the facts in that case were altogether different from the facts in the instant case. There the contract specifically provides that as soon as the load was taken off of the truck that the empty truck then was no longer in the service of the shipper but was exclusively in the control of its owner. Such facts do not exist here. On the contrary the evidence clearly discloses that at the beginning of the tobacco season the Transport Corporation inquired of Coltrain the number of trucks he could place at the disposal of Transport during the tobacco moving season. Transport not only desired all of the trucks that Coltrain could furnish, including 8 in number, but he wanted them entirely at Transport's disposal because Transport had tobacco to move promptly from various tobacco markets and he needed to know precisely the number of trucks

available for that purpose. Transport had many trucks of its own so engaged and the demand was such that it needed the additional eight trucks supplied by Coltrain and during this season Transport gave every order as to the movement of these eight trucks in carrying on the business of Transport in moving tobacco from the market to the warehouses in North Carolina and Virginia.

The entire evidence negatives any idea that it was on a per trip basis in the sense that one trip was disconnected from others and on this identical trip where the injury occurred the Coltrain truck was obeying the order given by Transport for its immediate return to Blackshear, Ga. to move another load of tobacco. The only evidence here which affords any semblance of a single trip idea is the arrangement by which Coltrain was to have a percentage of the freight charges. But who would contend that these charges were predicated solely on the load hauled one way, disconnected with the return trip for the purpose of reloading. It was the arrangement between Coltrain and Transport that these trucks would be at the entire disposal of Transport for the purpose of moving the season's tobacco crop which contemplated continuous use of the trucks and completely negatives any idea of a single trip contract.

There is not any real reason why the U. S. F. and G. needs to complain about the result. If Transport had possessed sufficient trucks of its own and the accident occurred with one of its trucks U. S. F. and G. would have been liable under its policy. But Transport was unable to move the volume of tobacco which he had to move within the season and in order for it to carry out its contract it was necessary for it to lease not one

but eight of these trucks and not for a single trip but for an entire season and under circumstances which placed these trucks and their drivers under the orders of Transport in the same manner and to the same extent as if the drivers and the trucks were the property of Transport. There is every reason why the policies issued should cover the operation and not a valid one why it should not.

The reasoning of Judge Barksdale in Hodges v. Johnson, D.C., 52 F.Supp. 488 is applicable here and was approved by our Circuit in War Emergency Co-op Association v. Widenhouse, 4 Cir., 169 F.2d page 403 at page 406.

In Eckard v. Johnson, 235 N.C. 538, 70 S.E.2d 488, it was held that the trip had been completed when the cargo had been carried from Conover to Richmond, Va., and the empty vehicle returned to Conover, N. C. The accident there occurred when the owner of the truck was operating it empty from Conover to Hickory which was clearly no part of even the single trip operation. As was said by Judge Devin, "His trip to Hickory to check the freight bill and collect his pay was in his own interest rather than the service of Johnson. For this purpose the use of the truck was not required."

Here the truck was being used solely in the business of Transport Corporation and was returning to Blackshear, Ga., under the specific direction for the purpose of expediting the further transportation of tobacco from the market to the warehouses. Hence, the exclusion clauses referred to in the Amendment No. 29 attached to the policy issued by United States Fidelity and Guaranty Co. is not applicable and its policy clearly covers the loss sustained.