NATIONWIDE MUTUAL INSURANCE COMPANY v. ROBERT A. EDWARDS, AMERICAN INSURANCE COMPANY AND ETTA W. HENRY, ADMINISTRATRIX OF THE ESTATE OF DONALD RAY HENRY

No. 825SC1326

(Filed 6 March 1984)

1. **Insurance § 90— vehicle liability insurance—applicability of "trailer exclusion" and "like insurance" clause**

A liability insurer had no liability above the limits required by the Financial Responsibility Act for an accident involving an insured tractor because of a clause excluding coverage for a vehicle while used by one other than the named insured with any trailer owned by such other person and not covered by like insurance in the company where the driver was purchasing the tractor from a person who retained title pending full payment; pursuant to advice from plaintiff insurer's agent, the policy listed the titleholder as the named insured, but the driver paid the premium; and at the time of the accident, the driver was operating the tractor to pull his own uninsured trailer, which he had acquired six days after issuance of the policy.

2. **Insurance §§ 8, 90— vehicle liability insurance—no waiver of "trailer exclusion" and "like insurance" clause**

Plaintiff liability insurer's agent did not possess any knowledge which would constitute a waiver of its rights to assert an exclusion from coverage for a vehicle while used by one other than the named insured with any trailer owned by such other person and not covered by like insurance in the company where the evidence showed that the agent knew the driver of the insured tractor was in the process of buying the tractor, that he would operate it, and that the named insured had no use of it or interest in it except as holder of legal title while awaiting the outstanding balance of the purchase price, but the evidence did not show that plaintiff's agent knew the purchaser intended to operate the tractor with an uninsured trailer.

1

**3. Estoppel § 6— necessity for pleading and evidence of estoppel**

Defendant could not rely on appeal on the affirmative defense of equitable estoppel where she neither pled such defense nor tried the case on this theory. G.S. 1A-1, Rules 8(c) and 15(b).

**4. Insurance §§ 8, 90— vehicle liability insurance—no estoppel to assert "trailer exclusion" and "like insurance" clause**

Given the general rule in North Carolina that one who does not hold legal title to a vehicle cannot obtain owner's liability insurance thereon and that a vendee cannot acquire such insurance until legal title has been transferred or assigned to him, a statement by plaintiff liability insurer's agent that only the titleholder of a tractor could be the "named insured" did not constitute a false representation or concealment of a material fact which estopped plaintiff insurer from asserting an exclusion from coverage for a vehicle while used by one other than the named insured with any trailer owned by such other person and not covered by like insurance in the company.

Judge PHILLIPS dissenting.

APPEAL by plaintiff from *Rouse, Judge.* Judgment entered 28 July 1982 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 16 November 1983.

Plaintiff insurance company brought this action for declaratory judgment against, *inter alia,* an administratrix who had filed a wrongful death action for her decedent's demise in a collision with a tractor-trailer driven by defendant Edwards. Edwards was purchasing the tractor pursuant to a "gentlemen's agreement" with one Brafford, who retained title pending full payment.

Edwards had informed plaintiff's agent of this arrangement, and the agent had advised him that the policy should list Brafford, the titleholder, as the named insured. Edwards had paid the premiums and had operated the tractor to tow his own uninsured trailer, which he had acquired six days after issuance of plaintiff's policy.

The policy contained the following "trailer exclusion" or "like insurance" clause:

None of the following is an insured:

. . . .

(iii) any person or organization, other than the named insured, with respect to:

(1) a motor vehicle while used with any trailer owned or hired by such person or organization and not covered by like insurance in the company (except a trailer designed for use with a four wheel private passenger automobile and not being used for business purposes with another type motor vehicle), or

(2) a trailer while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the company . . . .

Plaintiff sought a declaration that because of this clause it had no liability beyond that required by the Financial Responsibility Act, G.S. 20-279.21. The trial court concluded and adjudged that plaintiff provided coverage in the full amount of its policy.

Plaintiff appeals.

*Murchison, Taylor & Shell, by Vaiden P. Kendrick, for plaintiff appellant.*

*Yow, Yow, Culbreth & Fox, by Stephen E. Culbreth, for defendant appellee Etta W. Henry, Administratrix.*

WHICHARD, Judge.

The court made findings of fact, which are supported by competent evidence and are thus conclusive on appeal. *Broughton v. Broughton,* 58 N.C. App. 778, 781, 294 S.E. 2d 772, 775, *disc. rev. denied,* 307 N.C. 269, 299 S.E. 2d 214 (1982). The sole issue is the propriety of the conclusion and adjudication that plaintiff's policy provided coverage to the extent of its limits.

While the court did not state the basis of its conclusion, it appears to be that because of its agent's knowledge of conditions extant at the issuance of the policy, plaintiff either waived or was estopped to assert the trailer exclusion. We find evidence neither of such knowledge nor of other facts sufficient to create a waiver or estoppel, and accordingly reverse.

Specific exclusions of coverage when an insured vehicle is used with an uninsured trailer, or when an insured trailer is used with an uninsured vehicle, consistently have been held valid and enforceable because of the added hazard created by towing a

trailer. 12A M. Rhodes, Couch on Insurance 2d § 45:1089, at 745 (Rev. ed. 1981); 6C J. Appleman, Insurance Law and Practice § 4438, at 442-49 (1979); Annot., 31 A.L.R. 2d 298, 302 (1953). Whether the towed trailer caused or contributed to the loss in question is immaterial. *Maryland Casualty Co. v. Cross*, 112 F. 2d 58, 60 (5th Cir.), *cert. denied*, 311 U.S. 701, 85 L.Ed. 455, 61 S.Ct. 141 (1940); 6C J. Appleman, *supra*, at 457-58.

Under North Carolina law, coverage in excess of that required by the Financial Responsibility Act, G.S. 20-279.21, is voluntary. "The liability, if any, of the [carrier] for coverage in excess of that required by the Act must be judged according to the terms and conditions of the policy." *Caison v. Insurance Co.*, 36 N.C. App. 173, 178, 243 S.E. 2d 429, 432 (1978); *see also Younts v. Insurance Co.*, 281 N.C. 582, 585, 189 S.E. 2d 137, 139 (1972). Plaintiff concedes its liability to the limits set by the Act, but argues that it has no liability above those limits because of the exclusionary clause in the policy.

Our Supreme Court set forth general principles governing construction of insurance contracts in North Carolina in *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354-55, 172 S.E. 2d 518, 522 (1970); *see also Woods v. Insurance Co.*, 295 N.C. 500, 505-06, 246 S.E. 2d 773, 777 (1978). Absent ambiguity reasonably susceptible to conflicting interpretations, courts must enforce the contract as written, giving effect to each word and clause. They "may not, under the guise of interpreting an ambiguous provision, remake the contract and impose liability upon the company which it did not assume and for which the policyholder did not pay." *Trust Co.*, *supra*, 276 N.C. at 354, 172 S.E. 2d at 522. *See generally* 1 R. Anderson, Couch on Insurance 2d §§ 15:15 to :17 (1959); 13 J. Appleman, Insurance Law and Practice §§ 7383-84 (1976).

[1] The policy here covers the tractor and "any semi-trailer." This coverage is, however, "subject to all the terms of [the] policy having reference thereto." The "Basic Automobile Liability Insurance" section includes the "trailer exclusion" set forth above. The court found as facts that Brafford was the only named insured, that the trailer was owned by Edwards, that the trailer was not covered by "like insurance," and that the trailer was not designed for use with a four wheel private passenger automobile. At the time of the accident, then, the tractor fell within the

precise language of the exclusionary clause, and Edwards was not an "insured" under its terms. Plaintiff promised to pay only on behalf of the "insured." Under the precise terms of the policy, then, plaintiff has no liability. No other reasonable interpretation or alternative basis for liability is presented. Thus, nothing else appearing, the company was entitled to a judgment declaring absence of coverage beyond that statutorily required.

An insurance company may waive its right to assert exclusions from coverage.

> If an insurer, notwithstanding knowledge of facts then existing which by the language of the policy defeats the contract of insurance, nevertheless insures property, it will be held to have waived the policy provisions so far as they relate to the then existing conditions.

*Fire Fighters Club v. Casualty Co.*, 259 N.C. 582, 585, 131 S.E. 2d 430, 432 (1963); *see Rea v. Casualty Co.*, 15 N.C. App. 620, 625, 190 S.E. 2d 708, 712, *cert. denied*, 282 N.C. 153, 191 S.E. 2d 759 (1972); *see also Cato v. Hospital Care Association*, 220 N.C. 479, 484, 17 S.E. 2d 671, 674 (1941); *Midkiff v. Insurance Co.*, 198 N.C. 568, 571-72, 152 S.E. 792, 794 (1930); *Midkiff v. Insurance Co.*, 197 N.C. 139, 143, 147 S.E. 812, 814 (1929); *Aldridge v. Insurance Co.*, 194 N.C. 683, 686, 140 S.E. 706, 708 (1927) (all finding waiver based on actual knowledge of agent). *But see Iowa National Insurance Co. v. Coltrain*, 143 F. Supp. 87, 89 (M.D.N.C. 1956) (general knowledge of operations insufficient where agent had no specific knowledge of operation of trucks by third party in violation of policy provision); *Midkiff v. Insurance Co.*, 197 N.C. 144, 145, 147 S.E. 814, 815 (1929) (knowledge of general practice in community insufficient; agent must have knowledge of particular insured's violation of provision of policy at time policy issued); *Greene v. Insurance Co.*, 196 N.C. 335, 340, 145 S.E. 616, 618 (1928) (knowledge of agent of insured's violation, when acquired *after* issuance of policy, not imputed to insurer so as to create waiver or estoppel). The claimant has the burden, on a waiver issue, of establishing knowledge by the agent of facts existing at the issuance of the policy. *Fire Fighters, supra*, 259 N.C. at 586, 131 S.E. 2d at 433.

[2] The evidence here shows that plaintiff's agent knew defendant Edwards was in the process of acquiring the tractor, that he would operate it, and that the named insured had no use of it or

interest in it except as the holder of legal title while awaiting the outstanding balance of the purchase price. It does not show that the agent knew Edwards intended to operate the tractor with an uninsured trailer. The insurance would have remained in effect had he driven the tractor alone or with a trailer not owned or hired by him. The record establishes that he did not purchase the trailer until six days after the policy was issued. The claimant thus has failed to show that the agent possessed any knowledge which would evoke a finding of waiver.

Knowledge by the agent of events occurring *after* issuance of the policy cannot support waiver. *Greene v. Insurance Co., supra,* 196 N.C. at 340, 145 S.E. at 618. Arrangements between Edwards and plaintiff or its agent subsequent to the accident are thus irrelevant.

[3] Defendant has argued, in effect, that the actions of plaintiff's agent amounted to a misrepresentation which equitably estops plaintiff's assertion of the exclusion. Estoppel is an affirmative defense which must be specially pleaded. G.S. 1A-1, Rule 8(c); *Stuart v. Insurance Co.,* 18 N.C. App. 518, 522, 197 S.E. 2d 250, 253 (1973). Failure to plead an affirmative defense ordinarily results in waiver thereof. *Smith v. Hudson,* 48 N.C. App. 347, 352, 269 S.E. 2d 172, 176 (1980). The parties may, however, still try the issue by express or implied consent. G.S. 1A-1, Rule 15(b).

Defendant-administratrix neither pled nor tried the case on this theory. She thus cannot now present it on appeal. *Delp v. Delp,* 53 N.C. App. 72, 76, 280 S.E. 2d 27, 30, *disc. rev. denied,* 304 N.C. 194, 285 S.E. 2d 97 (1981); *Grissett v. Ward,* 10 N.C. App. 685, 687, 179 S.E. 2d 867, 869 (1971).

[4] Had defendant-administratrix properly presented the issue, she did not offer sufficient evidence thereon to support a judgment in her favor. The party claiming protection under the rule of equitable estoppel has the burden of establishing facts warranting its application. *In re Will of Covington,* 252 N.C. 546, 549, 114 S.E. 2d 257, 260 (1960); 31 C.J.S. *Estoppel* § 160 (1964). Defendant has not sustained this burden.

Our Supreme Court has stated:

[T]he essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false

representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended, or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Hawkins v. Finance Corp.*, 238 N.C. 174, 177-78, 77 S.E. 2d 669, 672 (1953), *quoted with approval in Transit, Inc. v. Casualty Co.*, 285 N.C. 541, 549, 206 S.E. 2d 155, 160 (1974). It is not necessary that the conduct of the party estopped be intentional; negligence may provide a basis for application of the doctrine. *Transit, Inc., supra*, 285 N.C. at 550-51, 206 S.E. 2d at 160-61 (failure to inform insured of changed business coverage in renewal); *see also* 16B J. Appleman, Insurance Law and Practice § 9088, at 560 (1981); 28 Am. Jur. 2d *Estoppel and Waiver* § 61 (1966).

The facts found here show only that (1) Edwards went to plaintiff's agent to obtain insurance for the tractor, (2) the agent knew he did not have legal title, (3) the agent told him Brafford would have to be the "named insured," (4) he accepted this arrangement and bought insurance so that he could operate the tractor, and (5) six days later he bought a trailer. There is no evidence that Edwards owned a trailer at the time he obtained the policy, or that he told the agent, then or later, that he intended to purchase one for use with the insured tractor.

There is no evidence that plaintiff's agent informed Edwards of the consequences of someone other than the "named insured" towing his own uninsured trailer with the insured tractor. She had no duty to warn him of all contingencies which could defeat coverage, however. "[A]n insurance agent is not required to affirmatively warn his customers of provisions contained in insurance policies." 16C J. Appleman, Insurance Law and Practice

§ 9168, at 176 (1981); *see also Farber v. Great American Insurance Co.,* 406 F. 2d 1228, 1233 (7th Cir. 1969) ("we have found no authority for the proposition . . . that an insurance agent must affirmatively warn his customers of the provisions contained in the insurance policies"). Persons entering contracts of insurance, like other contracts, have a duty to read them and ordinarily are charged with knowledge of their contents. *Setzer v. Insurance Co.,* 257 N.C. 396, 401-02, 126 S.E. 2d 135, 138-39 (1962); *see also Biesecker v. Biesecker,* 62 N.C. App. 282, 302 S.E. 2d 826 (1983); 16B J. Appleman, *supra,* at 573. The record contains no representation by the agent which could have led Edwards reasonably to believe there was any coverage other than that supplied by the terms of the policy itself. *Cf. Collard v. Universal Automobile Insurance Co.,* 55 Idaho 560, 45 P. 2d 288 (1935) (agent, after full disclosure to him of title situation, stated "the policy will be in force"); *Farmers Mutual Automobile Insurance Co. v. Bechard,* 80 S.D. 237, 122 N.W. 2d 86 (1963) (agent expressly told insured he was covered "regardless of what he was driving"); *see* 16B J. Appleman, *supra,* at 555-60.

There is no evidence of knowledge on the part of the agent, actual or constructive, of real facts inconsistent with the terms of the policy when issued. When the policy was issued, Edwards did not own the trailer, and there is no evidence indicative of an intent to purchase or hire one. "[T]o make the rule of imputing notice from facts exciting inquiry apply, it must appear that the inquiry suggested, if fairly pursued, would have resulted in knowledge of the fact." 44 Am. Jur. 2d *Insurance* § 1589, at 597 (1982); *see also Lancaster v. Insurance Co.,* 153 N.C. 285, 69 S.E. 214 (1910) (insurance company not estopped to assert non-ownership exclusion by failure to inquire about ownership); 16B J. Appleman, *supra,* at 571-72.

There is no evidence from which an estoppel could be found, then, unless the statement by the agent that Brafford would have to be the "named insured," since he was the titleholder, amounts to a misrepresentation or concealment of a material fact. G.S. 20-4.01(26) defines "owner" as

[a] person holding the legal title to a vehicle, or in the event a vehicle is the subject of a chattel mortgage or an agreement for the conditional sale or lease thereof or other like agree-

> ment, with the right of purchase upon performance of the conditions stated in the agreement, and with the immediate right of possession vested in the . . . conditional vendee . . . said . . . conditional vendee . . . shall be deemed the owner for the purpose of this Chapter.

Under this definition the agent arguably could have issued the policy with Edwards as the "named insured." In that event, the accident would have been covered.

The legal milieu in which the agent acted, however, included not only the foregoing statute, but also the case law interpreting the term "owner." The general rule is that "as between a vendor and vendee of a vehicle, the vendee cannot acquire valid owner's liability insurance until legal title has been transferred or assigned to him by or at the direction of the vendor." *Ohio Casualty Ins. Co. v. Anderson*, 59 N.C. App. 621, 623, 298 S.E. 2d 56, 58 (1982), *cert. denied*, 307 N.C. 698, 301 S.E. 2d 101 (1983); *see also Insurance Co. v. Hayes*, 276 N.C. 620, 640, 174 S.E. 2d 511, 524 (1970); *Gaddy v. Insurance Co.*, 32 N.C. App. 714, 716, 233 S.E. 2d 613, 614 (1977); *Gore v. Insurance Co.*, 21 N.C. App. 730, 733, 205 S.E. 2d 579, 582 (1974). Our Supreme Court has stated that

> for purposes of tort law and liability insurance coverage, no ownership passes to the purchaser of a motor vehicle which requires registration under the Motor Vehicle Act . . . until (1) the owner executes, in the presence of a person authorized to administer oaths, an assignment and warranty of title on the reverse of the certificate of title, including the name and address of the transferee, (2) there is an actual or constructive delivery of the motor vehicle, and (3) the duly assigned certificate of title is delivered to the transferee.

*Insurance Co. v. Hayes, supra.*

In *Ohio Casualty Ins. Co. v. Anderson, supra*, 59 N.C. App. at 624, 298 S.E. 2d at 58, this Court rejected the argument that "one who does not hold legal title to a vehicle cannot under any circumstances obtain owner's liability insurance thereon." It stated that "[t]he 'owner' of a vehicle is the holder of the legal title '[u]nless the context otherwise requires.'" *Id.* at 626, 298 S.E. 2d at 59 (quoting G.S. 20-4.01). It held that "[t]he discrete facts and circumstances" dictated a holding that the policy covered the

vendee, though he was not the holder of the legal title, since coverage was clearly intended and a contrary holding would have provided no coverage whatever. *Id.* "The discrete facts and circumstances" there are not present here, however, and that case has no bearing on resolution of this one.

Given the general rules in North Carolina that one who does not hold legal title to a vehicle cannot obtain owner's liability insurance thereon, and that a vendee cannot acquire such insurance until legal title has been transferred or assigned to him, we do not believe the agent's statement that only the titleholder could be the "named insured" can be held to constitute "[c]onduct which amounts to a false representation or concealment of material facts." *Hawkins v. Finance Corp., supra.* Defendants thus have failed to show conduct on the part of the agent from which an estoppel could be found.

The continued acceptance of premiums by the company does not constitute grounds for waiver or estoppel. The law does not require automatic notification to insurers when their insureds purchase additional vehicles, nor do insurers have a legal duty to determine what other vehicles the insured owns. There is no evidence that the company knew Edwards owned a trailer until after the accident. It thus continued to provide the limited coverage for which it had contracted.

Had Edwards been involved in a second accident under like conditions, acceptance of premiums might have supplied grounds for waiver or estoppel. *See Gouldin v. Insurance Co.,* 248 N.C. 161, 164-66, 102 S.E. 2d 846, 848-49 (1958) (general rules); Annot., 1 A.L.R. 3d 1139 (1965). Such is not the case here, however.

On this record we find no basis for holding that the plaintiff provides coverage in the full amount of its policy. Accordingly, the judgment is reversed, and the cause is remanded for entry of a judgment in accordance with this opinion.

Reversed and remanded.

Judge WEBB concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

I dissent for two reasons. First and foremost, I am of the opinion that Judge Rouse's conclusion that, under the evidence recorded, plaintiff company is obligated for the full limits of the policy it sold defendant Edwards was proper. But even if that was not the case, the exclusionary provisions of the policy that plaintiff relies on to escape its obligation are contrary to public policy, in my opinion, and therefore unenforceable by law. To sooner put in focus the indefensible character of the exclusionary provisions involved, I discuss the public policy ground first.

Though insurance policies are contractual in nature, they are not to be confused with ordinary bargain and sale contracts, from which the law of contracts mostly developed. Insurance policies are "contracts of adhesion" between parties of grossly unequal bargaining power. 43 Am. Jur. 2d *Insurance* § 159 (1982). The terms of insurance policies, except the policy limits, are seldom negotiated for. Insurance companies usually fix the conditions under which they will pay and, as with other exercises of arbitrary power, the conditions fixed occasionally defeat the purposes that such policies are supposed to serve. Yet, motor vehicle owners in this state are required by statute to insure their vehicles against legal liability to the minimum limits specified; and coverage in larger limits is a practical, if not statutory, necessity for most owners, particularly those engaged in business. The two central purposes of liability insurance in this state are to protect the public by compensating innocent tort victims and to indemnify those who negligently injure others against financial detriment, up to the limits paid for. The "trailer exclusion" and "like insurance" provisions are inimical to the achievement of either purpose, with no counterbalancing benefits. These provisions arbitrarily reduce the insurer's exposure, without the risk insured against having been enhanced in any way; and they arbitrarily deprive both insureds and the public of needed protection that has been fully paid for. That such effects can arbitrarily result from a trailer not insured by that company being towed by an insured tractor, not operated by the registered owner or "named insured," is an absurdity that good and sound law cannot tolerate. Nor can it tolerate insurance policies that are largely counterfeit. It is a matter of common knowledge that highway traveling tractors are built, bought, maintained and operated for one main

purpose—to pull trailers, loaded with merchandise. They have virtually no commercial utility otherwise; the more trailers they pull the greater utility they have, and one doesn't have to be either a trucker or an insurer of trucks to know that the common practice of tractor operators is to pull all trailers that they can be legitimately and profitably paid for, and that the risk is not affected one whit because the trailer is insured by another company, or not insured at all. All of this means to me that no liability insurers of tractors in this state should be permitted to rely on policy provisions that limit its exposure on a tractor so insured to times when it is pulling no trailer at all or one insured by it.

But however contracts are arrived at, provisions therein contrary to public policy will not be enforced in this state. *In re Port Publishing Co.*, 231 N.C. 395, 57 S.E. 2d 366 (1950). Contract provisions are against public policy "when they tend clearly among other things to injure 'the public confidence in the purity of the administration of the law,'" *Cauble v. Trexler*, 227 N.C. 307, 311, 42 S.E. 2d 77, 80 (1947), and when "the enforcement of them by the courts would have a direct tendency to injure the public good." *Electrova Co. v. Spring Garden Insurance Co.*, 156 N.C. 232, 235, 72 S.E. 306, 307 (1911). Also, "[a]greements which are unconscionable as a result of inequality of bargaining or sharp practices are clearly recognized as offensive to public policy and subject to equitable adjustment or rescission." Williston On Contracts Third Edition § 1628, p. 6 (1972). The "trailer exclusion" and "like insurance" provisions in the policy involved are clearly contrary to these principles. In *Mount Vernon Fire Insurance Co. v. Travelers Indemnity Co.*, 407 N.Y.S. 23, 63 A.D. 2d 254 (1978), the New York Supreme Court declared similar provisions to be void as against public policy. In *Great American Insurance Co. v. C. G. Tate Construction Co.*, 303 N.C. 387, 279 S.E. 2d 769 (1981), though not mentioning public policy, our Supreme Court correctly ruled that arbitrary policy cancellation provisions requiring timely notice of loss would no longer be automatically enforced to the ruination of insureds and members of the public, but would be enforced thereafter only when the failure to give notice harmed insurers. In doing so, the Court recognized that the provision requiring notice is a proper one, which serves the necessary purpose of enabling the companies to investigate and defend claims made against their insureds. Even so, the court irresistibly con-

cluded that when that necessary purpose has not been adversely affected by any delay that occurs, the law will not enforce the provision terminating the coverage. There is much more reason for not enforcing the "like insurance" and "trailer exclusion" provisions of this policy, because they serve no legitimate purpose whatever. In all events, however, in my opinion, the evidence of record supports the judgment appealed from and should be affirmed.

But the majority opinion's main failing is not the central holding that Edwards failed to prove that Nationwide had *waived* the exclusionary provisions that Nationwide relies on. Its main failing is the faulty premise that it starts from — that the insurance policy involved was really, rather than nominally, that of Brafford, in whose name it was issued. By starting there and treating the policy as written as though that was what the parties really agreed to, and moving thence to Edwards' technical status thereunder, which is essentially that of an uninterested stranger, and moving thence to the waiver question, the majority bypassed the undisputed import and thrust of the evidence; which was that the policy was really Edwards' and Brafford was but a straw or paper man, whose name was inserted as "named insured" only because the agent did not realize that the policy could properly be issued in Edwards' name or in both their names, and that in all events it was the purpose and agreement of both Nationwide and Edwards that his activities, rather than Brafford's inactivity, would be covered by the policy. This evidence, to my mind, not only shows that Nationwide waived, and is estopped from relying upon, the exclusionary provisions in the policy; it also shows that Nationwide agreed through its agent to cover Edwards' use of the tractor to the same full extent that it would have if he, Edwards, was designated "named insured," rather than Brafford. Had Brafford, as the "named insured," been operating the tractor when the accident involved in this case occurred, he would have been fully indemnified under the policy, regardless of whose trailer was being pulled. Edwards, who stands in Brafford's shoes, is entitled to no less.

The evidence, though brief, is without contradiction from Nationwide and shows that: The old tractor involved, which Bill Brafford owned, had been idle for several months, was not in condition to operate on the highway, had neither a license tag nor insurance, and Brafford had no desire to operate it. When Robert

Edwards, who owned and operated an auto supply business in Snow Hill, contracted to buy the tractor, his plan was to use it in operating a sideline hauling business and pay for it on time out of the proceeds, with Brafford retaining title until payment was completed. Nobody but Edwards was to be involved in this sideline business. After fixing, cleaning up, and painting the tractor, Edwards desired to insure his impending hauling operation against legal liability in the amount of $100,000 per person and $300,000 per occurrence. For the purpose of obtaining the insurance, Edwards went to Nationwide's Snow Hill agent, who was also a friend and neighbor. He told the agent how the tractor was acquired and what he was going to do with it and asked her what needed to be done to obtain the insurance. She told him the policy would have to be in Brafford's name because the title was in his name. She knew, and thus Nationwide knew, that the tractor was going to be operated by Edwards and that the insurance was being bought so that he could operate his hauling business and be insured while so doing. The agent and Nationwide knew that Brafford had no interest whatever in either operating the tractor or obtaining insurance on it; that Edwards was not asking it to insure Brafford's inactivity, but his own hauling operation with the tractor. In issuing the policy Brafford's name was inserted only because he still had title to the tractor and Nationwide and the agent (being presumably an honest person) intended to provide Edwards the full coverage sought and paid for, rather than meaningless and worthless coverage of only theoretical and technical benefit to Brafford. Edwards paid for the policy, which was mailed in an envelope addressed to Brafford, but in care of Edwards' place of business; and Edwards, of course, rather than Brafford, received the policy. The accident, which Nationwide now claims was not insured against, occurred when the tractor operated by Edwards was pulling a flatbed trailer loaded with corn, which is mostly what Edwards expected to haul when he got the tractor.

Though, as the majority recognizes, the agent was misinformed about it being necessary to issue the policy in Brafford's name, that is not important. What is important is that after being asked what to do to insure Edwards' operation the agent did not tell Edwards that if the policy was enforced as written, it would not provide the coverage that he came there to get and paid for.

Yet, under the majority's theory, Edwards and Nationwide contracted for insurance that would protect him only (1) when Brafford was using the tractor, which both knew would be never; or (2) when Edwards operated the tractor by itself, which both knew would be very seldom and never for profit, since they knew he did not get the tractor for the purpose of bob-tailing down the highway, but for the purpose of pulling loaded trailers; or (3) when the tractor was pulling a trailer insured by Nationwide, which both again knew would probably be never, since he had no trailer insured by Nationwide. No principle of law that I am aware of requires judges to conclude that people contracted to a vain and pointless thing when the circumstances also support the idea that they contracted for a sensible and useful purpose. That the company eventually admitted it was responsible for the statutory minimum limits of $15,000 per person and $30,000 per occurrence is not due to either the wording of the policy or the company's magnanimity; all liability was denied at the outset and this concession was not made until it was clear that Edwards was in lawful possession of the tractor when the accident occurred, and that the company was obligated for the minimum limits by operation of law.

Nor do I attach any significance to the fact, as the majority does, that the agent did not know Edwards was going to purchase the trailer that was involved in the collision. Under the circumstances, it was enough that she knew that the tractor would be pulling trailers of any kind, and that if Edwards did not receive the same coverage Brafford would have that the policy would be a pointless waste of time and money for Edwards. "If an insurer, notwithstanding knowledge of facts then existing which by the language of the policy defeats the contract of insurance, nevertheless insures property, it will be held to have waived the policy provisions so far as they relate to the then existing conditions." (Citations omitted.) *Winston-Salem Fire Fighters Club, Inc. v. State Farm Fire and Casualty Co.*, 259 N.C. 582, 585, 131 S.E. 2d 430, 432 (1963).

I vote to affirm the decision of the trial judge.