NORTH CAROLINA FEDERAL SAVINGS AND LOAN ASSOCIATION, Plain-
TIFF v. JOHN RAY, Defendant

No. 8826SC1273

(Filed 5 September 1989)

1. **Attorneys at Law § 5.1; Estoppel § 4.5— attorney's negligence in loan closing—estoppel unavailable to attorney**

   Defendant attorney was negligent in the handling of a construction loan for plaintiff lender by failing at closing to apply a land draw check so as to obtain a release of an existing land loan deed of trust and acquire a first lien on the property for the construction loan deed of trust, and defendant's negligence barred him, as a matter of law, from asserting equitable estoppel as a defense to plaintiff lender's action to recover damages for such negligence.

2. **Election of Remedies § 4— affirmative defense—necessity for pleading**

   An issue of election of remedies was not before the appellate court where defendant did not plead such defense or present that theory at trial.

APPEAL by plaintiff from *Gaines, Robert E., Judge.* Judgment entered 17 June 1988 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 17 May 1989.

This is a civil action in which plaintiff-client North Carolina Federal Savings and Loan Association appeals from a judgment holding that defendant-attorney John Ray was negligent in the handling of certain legal matters on behalf of the plaintiff, but that the plaintiff is equitably estopped from recovering from the defendant-attorney.

*Bailey, Patterson, Caddell & Bailey, by H. Morris Caddell, Jr., for plaintiff-appellant.*

*J. J. Wade, Jr. for defendant-appellee.*

JOHNSON, Judge.

Plaintiff North Carolina Federal Savings and Loan Association (hereinafter "plaintiff" or "NCF") instituted this legal malpractice action against defendant-attorney John Ray (hereinafter "defend-

ant") by the filing of its complaint which alleged that defendant was professionally negligent and in breach of his fiduciary duty to plaintiff in handling the closing of a construction loan for plaintiff. Plaintiff asserts that defendant failed at the closing to properly apply an advance of the construction loan, in the form of a land draw check, so as to obtain a release of an existing land loan deed of trust and acquire a first lien deed of trust securing the construction loan. Plaintiff therefore acquired a second lien on the property instead of a first lien. Defendant responded by denying negligence and raising, in the alternative, the affirmative defense of estoppel.

After a nonjury trial of this matter, the court made extensive findings of fact and concluded as a matter of law that defendant was negligent in the closing of the construction loan for plaintiff, but that plaintiff was estopped from recovering from defendant. Plaintiff gave notice of appeal to this Court in apt time.

The trial court made the following findings of fact which are pertinent to this appeal. In October 1980, NCF made a loan (the "land loan") to Allan & Warmbold Construction Co. ("Allan & Warmbold") to enable it to purchase certain property in Mecklenburg County to build a 96 unit condominium project. In consideration for the loan, Allan & Warmbold tendered its promissory note to NCF in the amount of $400,850.00, along with a deed of trust to Kemp M. Causey, trustee for NCF as security for the note. This land loan deed of trust constituted a first lien on the property.

NCF agreed to release property from the lien upon payment to it of the release price as stated in the land loan deed of trust. This right to release extended to all subsequent owners of the property. After a series of conveyances, most of the property was conveyed to Reginald, Inc. This conveyance was subject to the original land loan deed of trust.

In March 1983, NCF agreed to loan Reginald, Inc. $773,972.00 for the construction of twenty condominium units (the "construction loan") on part of the property. NCF's commitment letter to Reginald, Inc. required that the construction loan be secured by a first lien deed of trust on the 2.61 acres involved in the project. Defendant Ray was employed as the closing attorney for the loan.

On 18 March 1983, NCF sent Ray instructions for the closing of the construction loan. These included the directive that NCF had

approved a first mortgage construction loan to be secured by the 2.61 acre tract. NCF also included a check payable to the order of "Reginald, Inc. and John F. Ray, Trustee" in the amount of $67,500.00. The check was referred to in these instructions:

The following items are required if CHECKED:

___x___   Personal guarantee form [—] William A. and Candida Christie, Marc L. and Michele Flaster

___x___   Flood letter from registered surveyor

___x___   Corporate resolution

___x___   Loans to one borrower form

___x___   Please have borrower sign loan application

___x___   Please find enclosed our land draw check in the amount of $67,500.00

The trial court found as fact that it is the normal practice among attorneys in Mecklenburg County to apply a land draw check toward the release of any existing lien on the property to obtain a first lien for the construction loan. More funds, if needed, are to be obtained from the borrower, and sent, along with the land draw check, to the lender.

On 28 April 1983, Ray closed the construction loan. Instead of applying the $67,500.00 land draw check toward the release of the land loan deed of trust, he disbursed the check to the benefit of Reginald, Inc. As a result of defendant's misapplication of the check, NCF acquired a second lien on the 2.61 acres. Defendant, however, prepared a deed of trust for the construction loan closing which stated that the loan was secured by a first lien deed of trust.

On 3 May 1983, defendant sent NCF certain documents required by the closing instructions. One of these documents received by NCF, a copy of a request for title insurance, clearly showed that the 2.61 acres was subject to the earlier land loan deed of trust. The title insurance policy on the construction loan deed of trust also showed the prior lien.

Even though NCF never received the land draw check from defendant, and twice received evidence that its construction loan to Reginald, Inc. was only secured by a second lien on the 2.61 acres, NCF had no communication with defendant until 3 February 1984. On that date, a Mr. Phillip Hammond, an executive officer of NCF, telephoned defendant to inquire as to defendant's dis-

bursement of the $67,500.00 check. Defendant Ray sent Hammond the following letter in response:

> In reviewing my file, I find no indication in any instructions regarding any payment of the monies which I disbursed ($67,500) to North Carolina Federal. While North Carolina Federal has a first lien on this property[,] I discussed by telephone, with North Carolina Federal loan officers the release of this lien inasmuch as it would affect the property described in the Deed of Trust securing the April 28, 1983 loan. I was advised that the release of the first lien as it affected the 2.61 acre tract would be handled later with the borrower and that I should proceed to close without a release of the 2.61 acre tract from the lien of this Deed of Trust. This arrangement was satisfactory with the borrower and I proceeded to close the loan, disbursed the funds and reported the two Deeds of Trust, both to North Carolina Federal and to the title insurance company. *If your records do not agree with this, please advise.* [Emphasis added.]

Defendant Ray received no response to his letter from Hammond or anyone else at NCF. The court made no finding that defendant was instructed orally by an officer of NCF to close the construction loan without a release of the land loan deed of trust as claimed by defendant in his letter to Hammond.

The court found that from 13 October 1983 through 28 February 1984, defendant, at plaintiff's request, made five updated title searches in connection with the construction loan. After each search, defendant advised plaintiff that there were no changes in the record title which would affect plaintiff's security interest. Based on this advice, plaintiff made continued disbursements on the construction loan.

Subsequent to Phillip Hammond's conversation of 3 February 1984 with defendant, Hammond contacted William A. Christie, a principal of Reginald, Inc. Hammond and Christie amended the arrangement by which funds would be released to Reginald, Inc. upon the sale of each condominium. The parties formally agreed in a letter dated 13 February 1984 that plaintiff would receive $4,802.00 per condominium unit for release of the land loan, with the remainder of the release price being applied to the construction loan.

Thereafter, eight new units were sold. Defendant again at plaintiff's request, handled each of the closings, deducting and forwarding to plaintiff funds for the release of both the land loan and the construction loan. The court found, however, that defendant was never informed of the new agreement between plaintiff and Reginald, Inc. regarding discharge of the construction loan.

Sometime after eight of the twenty units were sold, Reginald, Inc. defaulted on the construction loan and went into insolvency proceedings. The remaining twelve units were sold after the proceedings were initiated.

Phillip Hammond testified at trial that plaintiff instituted foreclosure proceedings when Reginald, Inc. defaulted. In order to foreclose on the twelve remaining units, plaintiff had to release the land loan deed of trust which defendant had failed to release at the 28 April 1983 closing. Plaintiff disbursed $57,624.00 ($4,802.00 × 12) from the construction loan funds to release the land loan deed of trust.

The court concluded that defendant Ray owed a duty of care to plaintiff to close the 28 April 1983 loan in accord with its instructions. Although the court found those instructions were ambiguous, defendant was nevertheless negligent for, *inter alia*, failing to inquire as to the proper disbursement of the $67,500.00 check, and failing to close the loan in accord with the instructions or in accord with the standard of care of other attorneys in Mecklenburg County. Defendant was also found negligent for failing to give plaintiff a first lien deed of trust to secure the construction loan.

However, the court held plaintiff was estopped from recovering against defendant because plaintiff failed to advise defendant of his error in the closing as requested by defendant in his letter of 3 February 1984 and defendant changed his position in reliance thereon. Also, the court found plaintiff estopped for its failure to advise defendant of any complaint during all the times defendant handled the closings of the eight units when, the court says, defendant could have protected himself.

[1] Plaintiff contends in its sole Assignment of Error that the trial court erred, after concluding as a matter of law that defendant was professionally negligent, and then concluding as a matter of law that plaintiff was estopped to recover damages resulting from defendant's negligence. We agree.

N.C. FEDERAL SAV. AND LOAN ASSN. v. RAY

[95 N.C. App. 317 (1989)]

Our Supreme Court has set forth the elements of equitable estoppel:

> [T]he essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudically.

*Hawkins v. Finance Corp.*, 238 N.C. 174, 177-78, 77 S.E.2d 669, 672 (1953) (citations omitted).

The requirement of "lack of knowledge and the means of knowledge of the truth" on the part of one claiming estoppel as an affirmative defense raises principles of negligence as to its application. *Thomas v. Ray*, 69 N.C. App. 412, 417, 317 S.E.2d 53, 56 (1984). The conduct of a party claiming the benefit of estoppel is no less to be considered than that of the one sought to be estopped. *Peek v. Trust Co.*, 242 N.C. 1, 86 S.E.2d 745 (1955). Further, one who claims to have been misled by the misrepresentation or concealment of a material fact by another "must not have been misled through his own want of reasonable care and circumspection." *Id.* at 12, 86 S.E.2d at 753, *quoting* 19 Am. Jur. *Estoppel* sec. 86. In the absence of fraud, estoppel is not available to protect a party from the results of his own negligence. *Five Oaks Homeowners Assoc. Inc. v. Efirds Pest Control Co.*, 75 N.C. App. 635, 331 S.E.2d 296 (1985); *Thomas, supra.*

Turning to the facts of the instant case with these principles in mind, we must conclude that defendant Ray cannot avail himself of the equitable estoppel defense. There is ample evidence to support the trial court's finding that defendant was professionally negligent. His mishandling of the $67,500.00 land draw check could

have been avoided if defendant had inquired of plaintiff to clarify the meaning of its instructions for the construction loan closing. The very fact that the instructions were ambiguous as to the disbursement of the check should have alerted defendant to the need to inquire. Defendant was also negligent in his failure to obtain a first lien deed of trust to secure the construction loan as instructed by plaintiff.

When a party is misled through his own lack of diligence and reasonable care, he may not then avail himself of the doctrine of equitable estoppel. *Trust Co. v. Finance Co.*, 262 N.C. 711, 138 S.E.2d 481 (1964); *Thomas, supra.* In this case the trial court's legal conclusion that defendant was negligent, which was supported by the evidence, barred defendant, as a matter of law, from asserting equitable estoppel and the court erred in allowing the defense.

[2] We turn now to defendant's argument that plaintiff is barred from recovering because it has elected inconsistent remedies. Specifically, defendant contends that because plaintiff has pursued its claim against Reginald, Inc. under foreclosure and insolvency proceedings based on the amended loan document, it should be prevented from seeking what defendant terms an inconsistent remedy from him. Plaintiff, in its reply brief, argues that the defense of inconsistent remedies is an affirmative defense, and that as such, it is not properly before this Court since defendant did not raise the issue before this appeal. Again, we agree.

G.S. sec. 1A-1, Rule 8(c), entitled "Affirmative defenses," requires that a party's responsive pleading "shall contain a short and plain statement of any matter constituting an avoidance or affirmative defense sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved." Election of remedies is an affirmative defense which must be pleaded by the party relying on it. *New Hanover County v. Sidbury*, 225 N.C. 679, 36 S.E.2d 242 (1945); Annot., *Pleading of Election of Remedies*, 99 A.L.R. 2d 1315 (1965). It "introduces new matter in an attempt to avoid [plaintiff's claim], regardless of the truth or falsity of the allegations in the [claim]." *Roberts v. Heffner*, 51 N.C. App. 646, 649, 277 S.E.2d 446, 448 (1981).

Defendant did not plead election of remedies and did not present that theory at trial. He may not introduce it for the first time on appeal. *MCB Limited v. McGowan*, 86 N.C. App. 607, 359

S.E.2d 50 (1987); *Nationwide Mut. Insur. Co. v. Edwards*, 67 N.C. App. 1, 312 S.E.2d 656 (1984); *Delp v. Delp*, 53 N.C. App. 72, 280 S.E.2d 27, *disc. rev. denied*, 304 N.C. 194, 285 S.E.2d 97 (1981).

For all the foregoing reasons, we reverse the decision of the trial court and remand for further proceedings to determine plaintiff's damages.

Reversed and remanded.

Judges COZORT and GREENE concur.