# Richmond

KIRK P. ALDRIDGE, ETC. v. PIEDMONT FIRE INSURANCE CO.

April 23, 1945.

Record No. 2890.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Frederick H. Cole*, for the plaintiff in error.

*Alexander H. Sands*, for the defendant in error.

Browning, J., delivered the opinion of the court.

We are here concerned with the construction of a fire insurance policy. We shall state the facts as briefly as we may and be clear.

In July 1942, Mr. Aldridge, the plaintiff in error, purchased a small tract of land just outside of the city of Petersburg which he had conveyed to his daughter, Mrs. Louise Dunford Gibson. She and her husband were living in the dwelling located on the land at the time of the fire referred to hereafter. In August 1942, the plaintiff, without objection from Mrs. Gibson, erected a barn on the property at a cost of approximately $1200, of which barn he claimed to have been the sole and unconditional owner.

In September of 1942 he secured from the Piedmont Fire Insurance Co., through its agent, Mr. L. W. T. Bulifant, a policy of insurance on the barn and horses and harness, saddles and other riding and driving equipment, therein.

The amount of insurance on the barn was $1000. On July 28th, 1943, the barn was destroyed by fire and was a complete loss. In the second week in June, 1943, Mr. Aldridge removed his horses and riding equipment to Petersburg where he sold some of the former.

After the fire he filed with the insurance company a claim for the loss. Liability was denied and suit was instituted against the company by notice of motion for judgment for the sum of $1000. The jury returned a verdict for the plaintiff for the full amount which, on the motion of the defendant, the court set aside on the ground that the evidence disclosed, as a matter of law, that the barn insured, was vacant and unoccupied at the time it was destroyed and had been so for a longer period than that permitted by the terms of the policy and therefore the plaintiff was not entitled to recover anything.

There was a single assignment of error which was that the court erred in setting aside the verdict of the jury on the ground referred to. First: The defense urges that the vacancy provision of the policy, if applicable at all, applied to the dwelling located on the premises and not to the barn. Second: If the vacancy provision be held to apply to the barn, the evidence does not show as a matter of law, that it was vacant and unoccupied.

The policy contains two provisions concerning vacancy. One is found in the printed standard policy, proper, which is this:

"Unless otherwise provided by agreement in writing added hereto this company shall not be liable for loss or damage occurring * * * (f) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of ten days."

The other is found on the back of what is called a rider attached to the policy. It is this:

"Vacancy Permit—Permission is hereby granted for the within described dwelling to become and remain vacant or unoccupied for a period of not exceeding thirty (30) days (including the period of ten days allowed in printed conditions of this policy) at any one time. It is understood and agreed that if the vacancy or unoccupancy exceeds thirty days at any one time, permission for same must be specifically endorsed hereon, or this entire policy shall be null and void.

We have had no case in Virginia which is decisive of the precise situation here.

We do not think that the first contention of the plaintiff is sound. The position that the vacancy provision applies to the dwelling can not be accepted because the dwelling was not insured under the policy, there is no mention of it. It does not appear as an item in the terms. It is true that the word "dwelling" is used in the vacancy permit which appears on the back of the rider but it is, we think, without application because the policy does not pretend to insure the dwelling at all. The evidence does not disclose that the

dwelling was insured, in fact, in any other company by any policy. The provision in the body of the policy, which we have referred to, providing for a period of 10 days of vacancy or unoccupancy, employs the term "a described building", as descriptive of the subject of the insurance. The barn on the premises answers this description but the second contention of the plaintiff is that the evidence does not show that the barn was vacant and unoccupied. As we have seen, Mr. Aldridge moved his horses and equipment out of the barn during the second week in June, 1943, because of a misunderstanding with his daughter, who owned the land on which the barn stood. He sold a portion of these things in Petersburg and did not resume occupancy of the building. His own testimony, which is uncontradicted, shows this, and we can reach no other reasonable conclusion than that he had abandoned it and that the period of such abandonment was more than 10 days,—indeed, more than 30 days. It was from the second week in June of 1943 to July 28th, 1943, which was the date of the fire.

One of the witnesses, a lieutenant of the Petersburg Fire Department, testified that when he arrived at the scene of the fire he noticed an old tractor and some old lumber piled under the shed. That incident is not urged, however, as evidence of continued occupancy. We think it could not be. The barn had been used by the plaintiff as a place for his horses and riding equipment in the conduct of a riding school.

In the case of *Limburg* v. *German Fire Ins. Co.*, 90 Iowa 709, 57 N. W. 626, 48 Am. St. Rep. 468, 23 L. R. A. 99, we find this syllabus:

"The mere use of a store building as a place in which to store a few articles of personal property, no other business being carried on therein, renders the building 'vacant and unoccupied' within the meaning of those words as used in an insurance policy."

As to whether the vacancy or unoccupancy clauses can apply to a barn we answer in the affirmative. In the

case of *Corlies* v. *Westchester Fire Ins. Co.*, 92 N. J. L. 108, 112, 108 A. 152, this is said:

"Of course, the occupation of a barn necessarily and radically differs from a dwelling house. In order to occupy a barn within the meaning of the policy it does not require the insured to live or sleep in it. It is a sufficient compliance with the terms of the policy if the property insured is put to the use contemplated by the parties, as expressed in the contract of insurance."

We think the court was plainly right in holding that the vacancy of the barn by the plaintiff for a longer period than 10 days vitiated the policy and defeated his recovery thereon.

The judgment of the court is therefore

*Affirmed.*