WINSTON-SALEM FIRE FIGHTERS CLUB, INC. v.
STATE FARM FIRE AND CASUALTY COMPANY.

(Filed 14 June 1963.)

1. **Insurance § 7—**

Allegations and evidence to the effect that at the time the policy was issued insured's agent advised insurer's agent to the effect that at some future time the property would be converted from a dwelling to a club house, does not make out a cause of action to reform the policy to describe the premises as a club house, there being neither allegation nor evidence of mutual mistake or mistake induced by fraud.

2. **Insurance § 5—**

Insurer who has knowledge at the time of the issuance of the policy of the existence of conditions avoiding the policy under its terms will be held

to have waived the policy provisions so far as they relate to the then existing defects.

**3. Insurance § 74—**

Provisions of a fire insurance policy relieving insurer of liability for loss occurring while the property is vacant are reasonable and enforceable.

**4. Same; Insurance § 5—**

Where the premises do not become vacant until after the issuance of the policy, the knowledge of insurer's agent of the vacancy cannot waive the provisions of the policy suspending the insurance if the premises should become vacant for a period in excess of sixty days, and the evidence in this case *is held* insufficient to show that the premises were vacant at the time the policy was issued.

**5. Same—**

The premises in question were described in the policy as a dwelling, but insured contended that at the time the policy was issued insurer's agent was advised that the insured had purchased the property for use as a club house. The evidence disclosed that at the time of the fire the premises had not been occupied for any purpose for a period in excess of sixty days. *Held:* Nonsuit was proper, since vacancy for a period in excess of sixty days suspended the insurance regardless of whether the premises were used as a dwelling or a club house.

**6. Insurance § 74—**

The term "occupied" as used in a policy of fire insurance imports a practical and substantial occupancy and does not include a mere trivial or transient use.

APPEAL by plaintiff from *Gambill, J.,* October 1962 Term of FORSYTH.

Plaintiff brings this action to recover the insured value of its building destroyed by fire on 6 May 1961. The Building was insured by defendant by policy in the statutory standard form, G.S. 58-176, to which was attached Form 256-2, "DWELLING AND CONTENTS FORM (For Use in Writing Fire or Fire With Extended Coverage)." The building was described in the policy as "THE TWO STORY, APPROVED ROOF, FRAME, ONE FAMILY DWELLING. . ." The policy was dated 19 July 1960 and insured for a term of five years.

To relieve it of liability, defendant alleged the building had been vacant and unoccupied for more than ninety days at the time of the fire and by the express language of the policy and endorsement such nonoccupancy and vacancy suspended its obligation and relieved it of liability for loss occurring when so vacant or unoccupied.

After defendant answered, plaintiff amended its complaint. It alleged: The building was not occupied as a dwelling when the policy

was issued and was not intended to be used as a dwelling, but was purchased for use as a club house; defendant knew these facts when it issued the policy; delivery of the policy with knowledge of the vacancy and purpose to which property was to be put constituted a waiver of the policy provisions relating to occupancy and use of the building as a dwelling.

Plaintiff stipulated the building had not, when the fire occurred, been occupied as a private dwelling within the time required by the policy.

At the conclusion of plaintiff's evidence the court sustained defendant's motion for nonsuit.

*White and Crumpler by James G. White, Leslie G. Frye, and Harrell Powell, Jr., for plaintiff appellant.*

*Deal, Hutchins and Minor by Roy L. Deal for defendant appellee.*

RODMAN, J.   The policy as prescribed by statute, G.S. 58-176, provided: **"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring** (a) while the hazard is increased by any means within the control or knowledge of the insured, or (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days. . ." The endorsement "DWELLING AND CONTENTS FORM (For use in Writing Fire or Fire With Extended Coverage)," attached to the policy, granted permission "(a) For such use of premises as is usual or incidental to the *described occupancy* (emphasis supplied); (b) to be unoccupied for not exceeding 90 days at any one time (including 60 days allowed in policy), the term 'unoccupancy' being construed to mean a building that is entirely furnished but with personal habitants temporarily removed, provided premises are secured against intrusion during such period. . ."

The policy was delivered to plaintiff and the premium paid shortly after 19 July 1960, the effective date of the policy. Plaintiff retained the policy without suggesting a misdescription until it brought this suit. It alleged as a basis for reformation that when it applied for insurance it notified defendant's agent the building had been used as a dwelling, but plans were being made to change the building so as to adapt it to use as a club and with this information defendant's agent mistakenly described the building as a dwelling instead of a club house. It prayed that the policy be reformed so as to insure a club house instead of a dwelling.

Plaintiff does not allege fraud or mutual mistake; it merely alleges it gave defendant notice of an intent to remodel, at some future but not specified date, the building to fit it for service as a club house rather than as a private dwelling. There is neither allegation nor evidence to show what services the club would render its members. Would it provide quarters where members or guests could sleep? Would it serve meals? Would some member or employee of the club live there? Whatever the intent of the club might have been, the evidence discloses that nothing had been done to execute that intent when the fire occurred some ten months later. Plaintiff, when it received the policy, knew better than defendant whether the description of the building as a dwelling was then correct.

Plaintiff has neither alleged nor shown facts justifying a reformation of the policy sued on. *Setzer v. Ins. Co.,* 257 N.C. 396, 126 S.E. 2d 135, and cases there cited. We do not understand plaintiff now contends it is entitled on its allegations and evidence to a reformation of the policy.

Plaintiff, by amendment to its complaint, pleaded a waiver of the policy provision which suspends the insurance if the property is continuously vacant or unoccupied for a period greater than that fixed by the policy or endorsement.

If an insurer, notwithstanding knowledge of facts then existing which by the language of the policy defeats the contract of insurance, nevertheless insures property, it will be held to have waived the policy provisions so far as they relate to the then existing conditions. *Cato v. Hospital Care Assoc.,* 220 N.C. 479, 17 S.E. 2d 671; *Aldridge v. Ins. Co.,* 194 N.C. 683, 140 S.E. 706; *Greene v. Ins. Co.,* 196 N.C. 335, 145 S.E. 616; *Midkiff v. Ins. Co.,* 197 N.C. 139, 147 S.E. 812; 29A. Am. Jur. 193-194.

The contract provision relieving an insurer for liability for property destroyed by fire while "vacant or unoccupied" is a reasonable and enforceable provision. *Greene v. Ins. Co., supra; Alston v. Ins. Co.,* 80 N.C. 326; 29A. Am. Jur. 109; 45 C.J.S. 298.

Historically, provisions protecting an insurer against the extra hazard created by vacancy have been incorporated in fire insurance policies for many years — first by contract without statutory sanction, *Alston v. Ins. Co., supra,* and later with statutory approval. The earliest statutory provisions rendered the policy void if vacant or unoccupied for more than ten days. See sec. 43, c. 54, P.L. 1899, Rev. 1905, sec. 4760. The first modification in the statutory provisions was to change the provision from one voiding the policy to one suspending the insurance during the period of nonpermitted vacancy. C.S. 6437.

Not until 1945 was the period of permissive vacancy extended from ten to sixty days as presently provided. See c. 378, S.L. 1945.

Policy provisions relating to vacancies which occur after the policy has issued cannot be waived by the issuing agent. *Greene v. Ins. Co., supra;* 29 A. Am. Jur. 197-198.

The courts are not in agreement in the interpretation and effect to be given to policy provisions and the waiver thereof when a vacancy exists to the knowledge of the insurer at the time the policy is issued. Some hold that a vacancy known to insurer when it issues the policy constitutes a waiver of the policy provision with respect to that vacancy. See *Bledsoe v. Farm Bureau Mutual Ins. Co.,* 341 S.W. 2d 627. A few cases hold that a waiver created by knowledge of an existing vacancy is not limited to that vacancy but to any subsequent vacancy which may occur during the life of the policy. See *McKinney v. Providence Washington Ins. Co.,* 109 S.E. 2d 480. Others, recognizing the recent change in policy provisions which merely suspend the insurance during a nonpermitted vacancy period, hold that a vacancy existing at the time the insurance issues is not a waiver of the policy provisions. The insured has sixty days, or such other time as may be fixed by the policy and endorsements, in which to occupy the property. *Old Colony Ins. Co. v. Garvey,* 253 F 2d 299; *Connelly v. Queen Ins. Co.,* 76 S.W. 2d 906, 96 A.L.R. 1255, and annotations 1259 *et seq.*

Counsel has not called our attention to a decision by this Court, nor have we found any, applying the present policy provisions to a vacancy existing when the policy issues. The conclusion reached in *Old Colony Ins. Co. v. Garvey, supra,* accords with the interpretation given a policy provision by this Court in *Johnson v. Ins. Co.,* 172 N.C. 142, 90 S.E. 124.

Plaintiff alleged, and it had the burden of proving, defendant issued the policy of insurance with knowledge that the building was not then occupied. Without such knowledge there could be no waiver of the policy provision. *Swartzberg v. Ins. Co.,* 252 N.C. 150, 113 S.E. 2d 270; *Gouldin v. Ins. Co.,* 248 N.C. 161, 102 S.E. 2d 846.

The evidence relating to occupancy when the policy issued comes from plaintiff's witness who purchased the insurance. He testified that he informed defendant's agent the property was purchased with the intent of converting the building into a club house. The building was occupied when plaintiff purchased in the latter part of 1959. The tenant had promised to surrender possession on 1 January 1960 but had not done so because of serious illness in her family. The witness further testified: "I believe it was in the first part of February her son was in an accident, he was in a coma for several months, and we

didn't feel like setting the people out; and at the time I was over there I advised him (defendant's agent) I didn't know whether the house was empty at that time or not. About whether the house would be empty, I told him the house would be — when it did become empty plans was being made to remodel the house, and it would be something similar to the Police Pistol Club, would be used for the Club only. . . At the time that I talked with Mr. Enscore (defendant's agent), I didn't know whether the building was actually occupied or not at that time. . . .I hadn't been there in two or three months prior to going to Enscore's office. . . I told Mr. Enscore that it was a one-family, two-story dwelling house, is what it was at the time, whether it was occupied or unoccupied. . .BY THE COURT: Q. Let me ask you this. When did the parties get out? When did you first know they were out? A. It was some time after we taken the policy out. I don't recall — Q. How long before the house was burned? A. I couldn't give it specific. It would just be an estimate as to the time. Q. How many months? A. I'd say three to four months. Q. All right. Now, after they got out, what was in the house by way of furniture or anything? Was anything in there? A. There was nothing in the house. I went to the house one time after they moved out and locked all the doors. Q. And from then on there was nothing in the house to use; it wasn't even used by the Club for any purpose? A. Some of the committees had went out there on the Building Committee and had met, and a group from Wake Forest College had wanted it one night, and we let them use it for one night some time prior to the fire. Q. There was no furniture in there, and no equipment, or anything else; just a vacant house during the time? A. That is right, yes sir."

The evidence is not sufficient to show that defendant issued its policy with knowledge that the building was vacant. The evidence doesn't even establish the fact that the building was not then occupied as a dwelling. Plaintiff concedes it was not so occupied at the time of the fire and had not been so occupied for a period greater than that permitted by the policy.

Plaintiff's present contention is not, as asserted in the complaint, that defendant had knowledge of the vacancy of the dwelling when it issued the policy. Plaintiff now argues defendant issued the policy with knowledge that the building, when vacated, would not be used as a dwelling but as a club house and because of such knowledge waived the provision with respect to occupancy.

Defendant's denial of liability is not based on the theory that the hazard would be increased by using the property for club purposes. Its position is that its liability was suspended while the property was

vacant and not occupied for any purpose. Conceding without deciding that the information given defendant was sufficient to waive occupancy as a dwelling, it does not follow that defendant waived occupancy for the purpose for which plaintiff intended to use the building.

"Occupancy" must be construed with reference to the type of property insured and the use intended. The provision is not limited to dwellings; it applies alike to stores, warehouses, restaurants, club houses, and innumerable other types of buildings which one may desire to insure. Application of the provision to buildings not used for human habitation is well illustrated by *Corlies v. Westchester Fire Ins. Co.*, decided by the Supreme Court of New Jersey in 1918, reported 108 A. 152. There the defendant insured a barn owned by plaintiff. The policy contained an occupancy provision. Defendant contended it was relieved of liability because of noncompliance with that provision of the policy. The Court said: "Of course, the occupation of a barn necessarily and radically differs from a dwelling house. In order to occupy a barn within the meaning of the policy it does not require the insured to live or sleep in it. It is a sufficient compliance with the terms of the policy if the property insured is put to the use contemplated by the parties, as expressed in the contract of insurance." This statement of the law was quoted with approval by Browning, J., speaking for the Supreme Court of Appeals of Virginia in *Aldridge v. Piedmont Fire Ins. Co.*, 33 S.E. 2d 634, 158 A.L.R. 892. It is said in the annotations to the *Aldridge* case: "It appears to be a fundamental rule that conditions in a fire insurance policy against allowing the insured premises to become vacant or unoccupied are to be construed with reference to the species of property insured and the use contemplated for this particular type of property." Numerous cases applying the rule to many kinds of buildings such as barns, hog houses, stores, and other places of business, elevators, ice houses, factories, mills, schools, churches, and sanitariums, are listed in the annotation.

The Supreme Court of Pennsylvania in *United Cerebral Palsy Assoc. v. Zoning Board*, 114 A. 2d 331, 52 A.L.R. 2d 1093, said: "A 'club,' of which there are many different types, is, in substance, merely an organization or association of persons who meet or live together for the purpose of social intercourse or some other common object such as the pursuit of literature, science, politics or good fellowship."

A club house is defined in Webster's 3rd International Dictionary as "A house occupied by a club or commonly used for club activities." Plaintiff's evidence negatives any use of the building for club purposes. It does show that the building committee went to the property, presumably for the purpose of preparing plans to alter the building so as

to make it suitable for club purposes. The only other use which plaintiff made of the property after the tenant left was to permit a group from Wake Forest to use it for one night. The purpose for which the Wake Forest group used it is not shown. As said by Ervin, J., in *Cuthrell v. Ins. Co.*, 234 N.C. 137, 66 S.E. 2d 649: "The term 'occupied' implies a continuing tenure for a period of greater or less duration, and does not embrace a mere transient or trivial use. *Society of Cincinnati v. Exter*, 92 N.H. 348, 31 A. 2d 52; *Lacy v. Green*, 84 Pa. 514. A building is occupied when it is put to a practical and substantial use for purposes for which it is designed. 67 C.J.S. 84."

We reach the conclusion that the evidence affirmatively shows that the building was not used or occupied either as a dwelling or as a club house. Hence, because of the vacancy and unoccupancy extending beyond the period fixed by the policy, the insurance was suspended and defendant is not liable to plaintiff for any loss it may have sustained by the fire.

The policy names plaintiff as the insured and C. C. Cooper as mortgagee. Nowhere in the pleadings or evidence is reference made to Cooper as mortgagee. There has been no adjudication which affects his rights if the debt owing him had not been paid when the building was burned.

Affirmed.