IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 18, 2017 Session

## JOHNSON & ASSOCIATES, LLC, ET AL. v. THE HANOVER INSURANCE GROUP, INC., ET AL.

**Appeal from the Chancery Court for Sullivan County**
**No. B0024946M      John S. McLellan, III, Judge**

_____

**No. E2016-02469-COA-R3-CV**

_____

This is a case concerning a commercial-property insurance policy dispute. The insured party filed suit upon the insurance company denying theft coverage on a claim. The insurance company claimed that the vacancy clause excluded the theft coverage of the property at issue. The trial court found that the vacancy clause did not apply and that the policy required the insurance company to cover the theft. The insurance company appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Rockforde D. King, Knoxville, Tennessee, for the appellants, The Hanover American Insurance Company and The Hanover Insurance Group, Inc.

Wayne A. Ritchie, II, Knoxville, Tennessee, for the appellees, Johnson & Associates, LLC, and Johnson Industrial, LLC.

## OPINION

### I. Background

Johnson & Associates, LLC, is a commercial real estate leasing and management company that manages commercial properties owned by related entities including the property at issue, which is located at 212 Industrial Drive in Bristol, Tennessee. Johnson Industrial, LLC, is the related entity who owns the subject property. Johnson &

Associates and Johnson Industrial are hereafter referred to together as "**Johnson.**"

Johnson purchased insurance for its properties from the Hanover Insurance Group, Inc. and the Hanover American Insurance Company (**"Hanover"**). The Hanover policy covered at least 31 different properties. From 2006 through 2013, Johnson relied on insurance agents Hyde & O'Dell Insurance Services, Inc. (**"H&O"**) and BB&T Insurance Services, Inc. (**"BB&T"**) to obtain their coverage.

The Hanover policy was set to expire in October 2012. In November 2011, the tenant of the property at issue moved out, leaving the building vacant. Under the policy, "vacant" is defined as when more than a certain percentage of a property's square footage is not being used for "customary operations." Once a property was "vacant" for more than 60 days, the policy's standard vacancy clause became effective excluding certain coverages, including theft. Hanover issued notice to Johnson stating that coverage was being dropped on the vacant properties upon policy renewal. Johnson represented that full coverage including theft was desired for the upcoming year.

The parties met to discuss the future of the policy regarding the vacant properties. This meeting included an executive with Johnson, an agent of BB&T, and David Hyde of H&O. At the conclusion of the meeting, the Johnson executive and Mr. Hyde were informed by the BB&T agent that Johnson would retain full coverage over the properties, including theft. Johnson and Hanover, through their agents, went back and forth on this policy until the renewal date. The negotiations on behalf of Hanover were conducted primarily by BB&T insurance agent Kay Simmons. Hanover ultimately agreed to keep the properties on the policy based on certain conditions, including higher premiums and higher deductibles.

Mr. Hyde asked for confirmation of the coverage from Ms. Simmons, and she affirmed that theft coverage on the subject property was provided. BB&T prepared a revised proposal for the Hanover renewal indicating that the property would be insured as follows:

> *Vacant* Properties *Not* included in Blanket Bldg*:*
> 212 Industrial Dr., Bristol, TN
> Building: $12,413,775
> Actual Cash Value
> Special Form *Including Theft*
> Deductible - $10,000

The renewal policy listed the vacant properties separately instead of under the "blanket" section, as shown above. The policy also specified that the properties had a specific coverage limit, premium charge, and a specific deductible for "theft." The vacant properties were each assigned a specific "occupancy" classification. The properties were

given the occupancy classification of "Vacant Buildings." The theft deductible for the two properties classified as vacant was four times higher than the theft deductible for the properties not classified as vacant.

The coverage listed for the Industrial Drive property was "Building." The building coverage form provided that Hanover would pay for loss or damages resulting from "any Covered Cause of Loss." For the Industrial Drive property, the causes of loss are listed as "Special," a reference to the "Causes of Loss – Special Form." The Special Form stated that "Covered Causes of Loss means Risk of Direct Physical Loss unless the loss is: 1. Excluded in Section B., Exclusions; or 2. Limited in Section C., Limitations; that follow." The exclusions and limitations that followed did not exclude or limit coverage for theft. Therefore, theft was a "Covered Cause of Loss".

The policy also included a standard vacancy clause. The clause provided Hanover will not pay for losses resulting from certain causes, including theft, even if they are "Covered Causes of Loss," for a building that has been "vacant for more than 60 consecutive days" before the loss occurs. Under the policy, a building is "vacant" unless "at least 31%" of the building's square footage is being used "to conduct customary operations." The "customary operations" of the properties outside of the "blanket" were reflected in specific use or occupancy classifications listed in the policy determinations. The occupancy classification for the Industrial Drive property is "Vacant Buildings."

After receiving the policy, Mr. Hyde called Ms. Simmons again to confirm that theft coverage was being provided for the two vacant properties, including the property at issue. Mr. Hyde asked Ms. Simmons to show him where in the policy the vacant buildings were covered for theft. Ms. Simmons pointed him to the property being listed as "Vacant Buildings" and that the covered cause of loss was "Special," which includes theft, and that there was a "Theft Deductible" for the properties of $10,000.

In September 2013, during Hanover's 2012-2013 policy period, a theft occurred at the Industrial Drive property, resulting in about $847,557.33 of damage. Johnson reported the theft to Hanover in April 2014. On May 1, 2014, Hanover informed Johnson that "the theft to your property occurred more than 60 days after a time of known vacancy," and consequently Hanover was denying coverage pursuant to the vacancy clause.

In December 2014, Johnson filed suit against Hanover and BB&T. Johnson claimed that the theft caused damage, that the Hanover policy covered the theft, and that Hanover breached the policy by denying the payment. Johnson also asserted that BB&T agreed to "procure a policy of full coverage commercial insurance insuring the Covered Property against, among other risks, the risk of theft," and that in the event the court found that Hanover did not owe coverage, Johnson was entitled to judgment against BB&T for negligent failure to procure insurance.

- 3 -

In February 2015, Hanover removed the case to federal court based on diversity jurisdiction. Johnson then amended its complaint by adding H&O as a defendant, asserting a similar claim to one against BB&T. The addition of H&O as a defendant destroyed complete diversity of citizenship between the parties, forcing the case's return to state court.

Hanover moved for partial summary judgment, seeking only a declaration that the policy did not cover the loss. Hanover's motion did not request that it be dismissed from the case. Johnson moved for summary judgment, seeking judgment in its favor that the policy covered the loss; that Hanover was estopped form denying coverage based on the statements of its agent; and that, if the loss was not covered, the agents were liable for failing to procure the insurance coverage plaintiffs requested. BB&T and H&O also filed related motions.

The trial court granted Johnson's motion, denied Hanover's motion, and ruled that BB&T's and H&O's motions were moot. The court found that even though Johnson's building had been vacant for more than 60 days, Hanover owed coverage for the theft because:

> [I]n the policy declarations, the property's "Occupancy" is described as "Vacant Buildings," the covered cause of loss for the property is "Special," which includes coverage for theft; the policy lists a theft deductible for the property that is higher than the theft deductibles for the properties listed on the "blanket" portion of the policy; and the premium charged for this property is substantially higher than the premium charged for other covered properties.

The court also determined that "the vacancy clause applies to the numerous properties covered by the policy that were not vacant at the time the policy was issued – properties that could become vacant during the policy period – and not the properties classified as 'Vacant' in the policy itself." The court further found that "because all parties knew [when the policy was issued] that the property was vacant and had been vacant for some time, the vacancy clause…is deemed waived as to [the subject] property." Finally, the court stated that "even if Hanover's interpretation of the policy is reasonable, the interpretation offered by [Johnson] is reasonable as well, which means that the policy is ambiguous" and "must be construed against Hanover."

The court entered judgment in Johnson's favor for the loss and prejudgment interest. Hanover filed a timely notice of appeal.

## II.

## ISSUES

The issues raised on appeal are restated as follows:

A. Whether the trial court correctly found that the theft exclusion in the policy's standard vacancy clause does not apply to the particular property at issue.

B. Whether the trial court correctly found that the application of the theft exclusion in the policy's standard vacancy clause to the particular property at issue is at least ambiguous, and that any ambiguity must be strongly construed against the insurer.

C. Whether the judgment below should be affirmed because Hanover is estopped from denying coverage based on the statements of its agent that Hanover was providing full coverage, including theft, for the property at issue as a vacant property.

## III. STANDARD OF REVIEW

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is de novo with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.,* 395 S.W.3d 635, 671 (Tenn. 2013) (citing *Kinsler v. Berkline LLC*, 320 S.W.3d 796,799 (Tenn. 2010)). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rye*, 477 S.W.3d at 250 (quoting Tenn. R. Civ. P. 56.04). Pursuant to Rule 56.04 of the Tennessee Rules of Civil Procedure, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *Smith v. UHS of Lakeside, Inc.* 439 S.W.3d 303, 316 (Tenn. 2014).

Concerning the requirements for a movant to prevail on a motion for summary judgment, our Supreme Court has explained:

> We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that

summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] … supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. [v. Zenith Radio Corp.],* 475 U.S. [574,] 586 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Fuller v. Banks*, No. W2015-01001-COA-R3-CV, 2016 WL 409639 at *3 (Tenn. Ct. App. Feb. 3, 2016) (quoting *Rye*, 477 S.W.3d at 245).

Insurance policies are contracts. *Merrimack Mut. Fire. Ins. Co.,* 59 S.W. 3d 142, 147 (Tenn. Ct. App. 2001). Questions relating to the interpretation of written contracts involve legal rather than factual issues. *Brandt v. Bib Enters., Ltd.,* 986 S.W.2d 586, 592 (Tenn. Ct. App. 1998). "As such, courts interpret insurance policies using the same tenets that guide the construction of any other contract." *Am. Justice Ins. Reciprocal v. Hutchinson*, 15 S.W.3d 811, 814 (Tenn. 2000); *Hurley v. Tenn. Farmers Mut. Ins. Co.,* 922 S.W.2d 887, 892 (Tenn. Ct. App. 1995). The terms of an insurance policy "must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning. *Naifeh v. Valley Forge Life Ins. Co.,* 204 S.W.3d 758, 768 (Tenn. 2006). The primary rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Clark v. Sputniks*, 368 S.W.3d 431, 441 (Tenn. 2012). The policy should be construed "as a whole in a reasonable and logical manner, and the language in dispute should be examined in the context of the entire agreement." *Martin v. Powers*, 505 S.W.3d 512, 517 (Tenn. 2016) (citations and internal quotations omitted).

## IV. DISCUSSION

A.

- 6 -

The trial court correctly found that the theft loss is covered by the terms of the policy. Based on the plain language of the policy, the trial court determined that the vacancy clause did not apply to the property at issue. The court observed that there was "no dispute, that when the policy was renewed…all parties knew that the property at issue had been vacant for well over 60 days." Further, the court held that applying the vacancy clause to an already vacant property is inconsistent with well-founded principles of law. Therefore, the court concluded that the vacancy clause does not apply to the property that was vacant at the time of the renewal, that was insured as "Vacant Buildings," and there was no clause which limited the time of vacancy. We agree.

When read as a whole, the insurance policy provides theft coverage for the property at issue. The "cardinal rule" of contract interpretation is "to ascertain and give effect to the intention of the parties." *White v. Empire Exp., Inc.,* 395 S.W.3d 696, 714-715 (Tenn. Ct. App. 2012). The purpose of vacancy clauses is "to avoid liability where the risk has been increased by vacancy." *Providence Washington Ins. Co. v. Stanley*, 403 F.2d 844, 849 (5th Cir. 1968); *Couch on Ins.* § 94:102. Vacancy clauses "are to be construed in the light of conditions existing when the policy is issued." *Couch on Ins.* § 94:110. When a party intends for a property to remain vacant throughout the duration of the coverage, they can have the property "insured as vacant property." *Couch on Ins.* § 94:151.

An insured party complies with a vacancy limitation "if the property insured is put to the use contemplated by the parties, as expressed in the contract of insurance." *Winston-Salem Fire Fighters Club, Inc. v. State Farm Fire & Cas. Co.*, 131 S.E.2d 430, 434 (N.C. 1963) (quoting *Corlies v. Westchester Fire Ins. Co.*, 108 A. 152, 154 (N.J. 1918)).

There is no dispute that when the policy is read as a whole–coverage forms, cause-of-loss forms, and declarations–the property at issue generally has theft coverage. The issue at bar is whether the vacancy exclusion applies. When evaluating the policy as a whole, there seems to be no reasonable basis for believing that Hanover issued the policy only to have it immediately excluded due to the vacancy. The negotiations of the policy were drawn out for almost a year due to these two vacant properties. Hanover charged higher theft deductibles and premiums on the vacant properties than the occupied properties. Insurance companies calculate the premiums and deductibles based on the risk that a certain property poses. Therefore, the increase attempts to offset the increased risk of the vacant property. Further, the parties knew the lots were vacant at the time the policy was issued, and there was no clause limiting the time the property could remain vacant. Therefore, the vacancy exception cannot apply to the previously vacant lots.

As previously noted, "vacant" is a defined term under the policy. Per the policy, "[s]uch building is vacant unless at least 31% of its total square footage is used by the building owner to conduct customary operations." As a result of Johnson and Hanover's

negotiations, the property at issue was insured as a "vacant building." Therefore, even if the vacancy provision did apply to this property, the property would not be vacant under the defined term of the policy causing no effect on the property.

Hanover argues that Johnson has previously conceded that the property was vacant. While Johnson and H&O both previously stated that the property was vacant, they both were using the term vacant in its dictionary sense. The Merriam-Webster Dictionary's relevant definition for vacant is "being without content or occupant." *Vacant*, Merriam – Webster Dictionary (2018). The building was in fact vacant under this definition. Johnson however, never conceded that the building was vacant as defined by the policy. Further, nothing in the record supports that the property was vacant under the policy's definition.

Next, the trial court's interpretation of the policy is consistent with the rules for interpreting insurance policies. There are three particularly important rules to the case at hand. *First*, "where [an insurance] policy is issued on vacant and unoccupied property with that knowledge and upon an agreement or with the expectation on the part of the insurer and the insured that the property is to remain vacant, the clause against vacancy is deemed waived." *McCaleb v. American Ins. Co.,* 325 S.W.2d 274, 277 (Tenn. 1959) (quotation marks omitted). In *McCaleb*, the court held that the waiver of the vacancy clause was not effective unless the provider knew the property would remain vacant for a period beyond the duration of the policy.

Hanover knew the property was vacant and conducted extensive negotiations with Johnson to provide coverage. Hanover conceded to allowing the vacancy by classifying the building as a "vacant building" and by failing to include a clause requiring a tenant to limit the vacancy. Coupled with the increased premiums and deductibles there is no evidence to show that Hanover had reason to believe that the property would certainly be leased within the coverage period. It would defy all logic to allow an insurance company to knowingly insure a vacant building only to deny coverage because that building's occupancy status has remained constant, barring a special provision requiring occupancy to be achieved. Because Hanover knew of this vacancy at the time of the policy's issuance, the vacancy clause is waived in respect to the vacant properties at that time.

*Second*, exclusions or limitations "are to be most strongly construed against the insurer." *See Warfield v. Lowe,* 75 S.W.3d 923, 925 (Tenn. Ct. App. 2002). However, the court "will not give them such a forced, unnatural or unreasonable construction as would lead to nonsense or absurdity." *Board of Trustees of the Sumner Cnty. Employees' Trust Fund v. Graves*, 1999 WL 1086454, *3 (Tenn. Ct. App. 1999). Still, "[i]t is well settled that exceptions, exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured." *Allstate Ins. Co. v. Watts*, 811 S.W. 2d 883, 886 (Tenn. 1991).

In evaluating the trial court's application of the vacancy provision, the provision does not appear to be a "forced, unnatural, or unreasonable construction as would lead to nonsense or absurdity." In fact, the alternative interpretation would lead to nonsense and absurdity. This interpretation rather seems to make the most sense. The vacancy provision still applies to all of the insured properties, less the ones classified as "vacant buildings." This provision will only apply to the buildings in which it makes sense, and not the two "vacant buildings," in particular the building at issue.

*Third*, "[a]ll provisions of a contract 'should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract.'" *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 85 (Tenn. 2012).

When the policy is read excluding the vacancy provision from the "vacant buildings," the policy seems consistent. The best way to harmonize this policy is to find that every clause has a meaning. To achieve this goal, the vacancy clause must only apply to the buildings that were not classified as vacant buildings. Otherwise the clause providing coverage for the vacant properties would be useless. Thus, the trial court's interpretation of the policy was correct.

Finally, Hanover has failed to prove that the vacancy exclusion applies to the property at issue. "'[A]n insurance company has the burden of proving that an exclusion in its policy applies to a claim.'" *Patterson v. Shelter Mut. Ins. Co.*, No. M2014-01675-COA-R9-CV, 2015 WL 5320231, *8 (Tenn. Ct. App. Sept. 11, 2015) (quoting *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W. 3d 13, 22 n.10 (Tenn. Ct. App. 2002)). "It is well settled that exceptions, exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured." *Watts*, 811 S.W.2d at 886. *See also Travelers Ins. Co. v. Aetna Casualty & Surety Co.*, 491 S.W. 2d 363, 367 (Tenn. 1973) ("A provision in a policy limiting or reducing coverage is to be construed strongly against the insurer."). Further, "[a]ny contractual provision in a policy of insurance, made for the benefit of the insurer, not mandatory under a statute, may be waived by an officer or agent of [the] insurer who has actual or apparent authority so to do." *Bill Brown Constr. Co. v. Glens Falls Ins. Co.*, 818 S.W.2d 1, 9 (Tenn. 1991).

Hanover failed to show that the exclusion applies to the property at issue. As noted above, Johnson was using the property for the "use contemplated by the parties." The purpose of the vacancy clause was to avoid an increased risk of liability caused by vacant properties. Therefore, given the clause's text and purpose, and the requirement that the clause be construed against the insurer, the property at issue was not "vacant" within the meaning of the theft exception. Even if the clause was found to be applicable, it would not apply due to Hanover and their agents waiving the clause by affirming that there was theft coverage on the property at issue.

**B.**

At a minimum the trial court was correct in finding that the policy was at least ambiguous and must be construed in favor of the insured. "When an ambiguity is found in an insurance policy, it 'must be construed strongly against the insurer and in favor of the insured.'" *Fisher v. Revell*, 343 S.W.3d 776, 780 (Tenn. Ct. App. 2009). *See Ryan v. MFA Mut. Ins. Co.*, 610 S.W.2d 428, 436 (Tenn. Ct. App. 1980) ("Where ambiguous, the language of an insurance contract is always construed most strongly against the insurance company which drafts it; an insurance contract should be read to accord with the reasonable expectations of a purchaser so far as the language permits."). "[C]ontracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls." *Tata v. Nichols,* 848 S.W.2d 649, 650 (Tenn. 1993).

The trial court held that the exception should not apply to the property at issue. This is not the only meaning of the clause. It would also be plausible to say that the theft exception applied to the property at issue. Therefore an ambiguity exists that must be interpreted in favor of the insured. When the ambiguous clause is interpreted in favor of the insured, the theft exclusion does not apply. In conclusion, theft coverage exists on the property at issue.

**C.**

Hanover is estopped from denying theft coverage for the subject property based on the representations of its agent and "producer" BB&T. The Tennessee Supreme Court has held that an insurance company will be estopped from denying coverage by representations by the company's agent that requested coverage has or will be provided, even if there is language in the policy to the contrary. An "insurance company is generally deemed estopped to deny policy liability on a matter arising out of the negligence or mistake of its agent, and if either party has to suffer from an insurance agent's mistake, it must be the insurance company." *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 519-21 (Tenn. 2012) ("[A]s to the specific matter of a mistake by an insurance agent as occurred in this case, the common law clearly dictates that the insurer is estopped to deny coverage."). Estoppel is particularly appropriate where "the insured instructed his insurance agent to make a change in the insured's insurance coverage, and the agent made a mistake in carrying out the instruction." *Allstate*, 363 S.W.3d at 522.

"An insurance producer who solicits or negotiates an application for insurance shall be regarded, in any controversy arising from the application for insurance or any policy issued in connection with the application between the insured or insured's beneficiary and the insurer, as the agent of the insurer and not the insured or insured's

beneficiary. This subsection (b) shall not affect the apparent authority of an agent." Tenn. Code Ann. § 56-6-115(b). The purpose of this statute is "to prevent an insurance company from denying responsibility for the representations and actions of its agent from whom an application for insurance is voluntarily accepted to protect an applicant who relies on the such representations and actions of the insurer's agent." *Acuity Mut. Ins. Co. v. Frye*, 699 F. Supp. 2d 975, 986 (E.D. Tenn. 2010).

Here, there is no question that BB&T was a "producer" and was acting for Hanover. The policy before the court specifically states that Hanover insurance is sold through agents called "Producers," and it lists BB&T as the "Agent" for the policy. Hanover is thus bound by BB&T's statements in which it, more than once represented that theft coverage would or was being provided for the subject property as a vacant property. Additionally, BB&T's insurance agent, Ms. Simmons, provided separate assurance in statements made to Johnson's agent. Therefore, Hanover would be estopped from denying coverage following *Allstate.*

# V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellants, Hanover American Insurance Company and Hanover Insurance Group, Inc.

_____
JOHN W. MCCLARTY, JUDGE